ANDRITSCH, Appellant, v. HENSCHEL, Respondent.

*April 2—April 27, 1965.*

For the appellant there was a brief and oral argument by *Edward Rudolph* of Milwaukee.

For the respondent there was a brief by *Hoffman, Cannon, McLaughlin & Herbon,* attorneys, and *David M. Quale* of counsel, all of Milwaukee, and oral argument by *Mr. Quale.*

GORDON, J.    In final argument to the jury, the defendant's counsel called the plaintiff a "Nazi." The question which we

must determine is whether the use of this epithet requires a new trial.

There is probably no term which more inescapably must be branded a "hate" word. The use of the expression in final argument to the jury was patently improper; it was designed to inflame the jury and to procure for the defendant a benefit resulting from the venom and ignominy attendant to such label.

It is to be noted that, on the defendant's behalf, the same law firm handled both the trial and this appeal, but such firm was represented at the trial by a different lawyer from the one who has presented the appeal. We have no hesitancy in labeling as abusive and improper the conduct of the attorney who represented the defendant at the trial.

This court has often in the past strongly condemned such obvious attempts to prejudice a jury. In *Georgeson v. Nielsen* (1935), 218 Wis. 180, 185, 260 N. W. 461, there was a transparent attempt to prejudice the jury, and this court commented:

"A remark is made by counsel, known by him to be improper, and made with intent and expectation that it will improperly influence the jury to the advantage of his client and the disadvantage of the opposing party. No extraneous evidence is needed to establish such intent. If such result is not intended, why are such remarks made?"

See also *McGaw v. Wassmann* (1953), 263 Wis. 486, 496, 57 N. W. (2d) 920, 58 N. W. (2d) 663, and *Corti v. Cooney* (1926), 191 Wis. 464, 472, 211 N. W. 274.

Appeals to jurors on oral argument regarding race prejudice are objectionable. See *Di Donato v. Consolidated Edison Co. of New York, Inc.* (1963), 19 App. Div. (2d) 516, 240 N. Y. Supp. (2d) 36. Similarly, attempts by counsel to discredit a litigant by reference to nationality are grounds for reversal. *Marx v. State* (1941), 141 Tex. Crim. 628, 150

S. W. (2d) 1014; *Abbate v. Solan* (1939), 257 App. Div. 776, 15 N. Y. Supp. (2d) 332; *Miller v. People* (1921), 70 Colo. 313, 201 Pac. 41. The reference in argument to a litigant's religion will likewise warrant reversal. *Moss v. Sanger Brothers* (1889), 75 Tex. 321, 12 S. W. 619.

The appellant urges that the argument of counsel was so prejudicial on its face as to necessitate a new trial as a matter of law. We are fully mindful of the seriousness of the impropriety committed in the instant case, but there are other circumstances in the instant case which persuade us to hold that the trial court did not abuse its discretion in refusing to order a new trial. We have often held that this type of motion is addressed to the discretion of the trial court and that this court will not intrude in the absence of an abuse of such discretion. *Schneck v. Mutual Service Casualty Ins. Co.* (1964), 23 Wis. (2d) 649, 660, 128 N. W. (2d) 50; *Fields v. Creek* (1963), 21 Wis. (2d) 562, 572, 124 N. W. (2d) 599; *Smith v. Rural Mut. Ins. Co.* (1963), 20 Wis. (2d) 592, 123 N. W. (2d) 496.

A significant factor which supports the trial court's determination is that it was the plaintiff's own counsel who first planted in the jury's mind that Mr. Andritsch may have been a Nazi. On *voir dire* the plaintiff's attorney asked the jurors whether they would be prejudiced against the plaintiff if the evidence disclosed that the plaintiff had been a member of the Nazi party during World War II. The plaintiff's counsel also planted the seed that his client had been a German soldier in World War II and had fought on the side opposing the United States.

These disclosures were contained in voluntary and unilateral declarations at the outset of the trial and clearly represented a calculated (but, perhaps, misguided) trial strategy on the part of the plaintiff's counsel. Thus, in a very real sense, it was the plaintiff's own counsel who opened the door; this previous reference to Mr. Andritsch as a one-time Nazi

must have heavily influenced the trial court in determining whether there was a poisonous effect to the sting of the defendant's closing argument.

We note that the trial judge carefully evaluated the possible prejudicial effect of the closing argument of the defendant's counsel, and he stressed the fact that an inquiry into Mr. Andritsch's background as a member of the Nazi party had been explored by his own attorney on *voir dire* examination. It is apparent from the trial judge's oral decision that he promptly prevented any further discussion of the matter in the presence of the jury.

This court does not have before it the benefit of a transcript of the trial, nor do we have the context of the words actually used during the closing arguments. In the absence of a transcript, the question before us is whether the pleadings, decision, findings and conclusions sustain the judgment. *Estate of Reynolds* (1964), 24 Wis. (2d) 370, 129 N. W. (2d) 251; *Stelloh v. Liban* (1963), 21 Wis. (2d) 119, 122, 124 N. W. (2d) 101; *Nichols v. United States Fidelity & Guaranty Co.* (1961), 13 Wis. (2d) 491, 109 N. W. (2d) 131.

The trial judge was in a better position than we are to weigh the impact of the statement to the jury made by the defendant's counsel. The tone of voice used by counsel and the context of his statement are not disclosed by the record before us. Handicapped by the absence of a transcript, we are particularly reluctant to find that the trial judge abused his discretion.

That the jury was not, in fact, prejudiced by counsel's remark is also hinted, at least, by the fact that several answers on the part of the jury to other questions of the special verdict were apparently fair ones so far as this plaintiff is concerned. The first question of the special verdict inquired whether the defendant had agreed "to keep and maintain the premises in good repair." The jurors answered this in the

affirmative. This response was clearly favorable to the plaintiff.

The jury also found that the defendant was negligent in so maintaining the premises and that such negligence was a substantial factor in causing the accident. Such answers were also in the plaintiff's favor. In response to the seventh question of the verdict, the jury assessed the sum of $2,000 for pain, suffering, and disability on the part of the plaintiff, although his total medical expense was only $28 and his loss of earnings $246. While these figures do not necessarily establish an absence of prejudice, there is a relevant comment in *Plautz v. Kubasta* (1941), 237 Wis. 198, 207, 295 N. W. 667:

"Where remarks have a clearly prejudicial tendency, the fact of prejudice usually is indicated by an excessive or inadequate award of damages or by findings that are against the weight of the evidence, and where the findings of the jury seem to be in accordance with the preponderance of the evidence and the damages assessed are moderate, it cannot ordinarly be said that the argument resulted in prejudice."

While we severely disapprove of the closing argument used in this case, we conclude that upon all the factors considered in this opinion we cannot hold that there was an abuse of discretion on the part of the learned trial court. However, though not prejudicial as a matter of law, counsel's argument transgressed propriety, and we have decided that costs should be denied to the respondent upon this appeal.

*By the Court.*—Judgment affirmed, without costs.

HALLOWS, J., took no part.

WILKIE, J. (*dissenting*). In my opinion the improper argument by defense counsel in which he referred to the

plaintiff as a "Nazi" was prejudicial. Although we are handicapped by the absence of a transcript, and as the majority notes, several questions were answered in a manner favorable to the plaintiff, the jury allocated 60 percent of the negligence to him and thus barred him from any recovery. This is enough evidence of prejudice to convince me that a new trial should have been ordered. It is true that wide latitude is allowed to counsel on closing jury arguments. But there are limits as noted in the cases cited by the majority. The use of the word "Nazi" is so offensive and so prejudicial on its face, or, in any event in this case, that I would hold it was an abuse of discretion for the trial court not to have granted a new trial on this ground. In this era when all our institutions are straining to stamp out intolerance such a plain attempt to poison the jurors' minds should not be countenanced. I would reverse and order a new trial.