Valerie SCHULTZ, Gaylord Schultz and Joyce Schultz, Plaintiffs-Respondents-Petitioners,

EMPLOYERS HEALTH INSURANCE COMPANY, a Domestic Insurance Company, Subrogated-Plaintiff,

v.

DARLINGTON MUTUAL INSURANCE COMPANY, a Domestic Insurance Company and Theodore H. Tollackson, a/k/a Ted Tollackson, Defendants,

Carroll E. METZNER, Appellant-Cross Petitioner.†

Supreme Court

*No. 91–2746–FT. Oral argument November 1, 1993.—Decided February 24, 1994.*

(Also reported in 511 N.W.2d 879.)

†Reconsideration filed March 16, 1994. Reconsideration denied, without costs, April 13, 1994.

For the plaintiffs-respondents-petitioners there were briefs by *John C. Mitby, John Walsh, Michael J. Modl* and *Axley Brynelson,* Madison, and oral argument by *John T. Walsh.*

For the appellant cross-petitioner there were briefs by *Carroll Metzner, David J. Pliner* and *Bell, Metzner, Gierhart & Moore, S.C.,* Madison, and oral argument by *Steven J. Caulum.*

HEFFERNAN, CHIEF JUSTICE. This is a review of an unpublished decision of the court of

appeals reversing in part an order of the circuit court for Lafayette county, William D. Johnston, Judge, which imposed plaintiffs' costs and Lafayette county's costs upon mistrial against defendant's attorney, Carroll Metzner.[1] The issue before this court is whether the court of appeals correctly determined that the circuit court erroneously exercised its discretion in awarding plaintiffs' costs and Lafayette county's costs against Attorney Metzner. We conclude that the circuit court's exercise of discretion was not erroneous. Accordingly, we reverse that portion of the court of appeals' decision that reverses the circuit court's award of plaintiffs' costs against Metzner. We affirm that portion of the court of appeals' decision that affirms the circuit court's award of Lafayette county's costs against Metzner.

The underlying action in this case was a claim by the plaintiffs, Valerie Schultz, Gaylord Schultz and Joyce Schultz, against defendant Theodore Tollackson for damages arising from injuries sustained in an automobile accident. At trial, John Walsh and John Mitby

---

[1] In his brief, Attorney Metzner also raises arguments regarding that portion of the court of appeals' decision affirming the circuit court's order granting the mistrial. However, in his cross-petition for review, Attorney Metzner did not request review of this portion of the court of appeals' decision. Section (Rule) 809.62, Stats. 1991–92, governs petitions for review with this court. Section (Rule) 809.62(6), Stats., provides in relevant part:

> If the petition is granted, the petitioner cannot raise or argue issues not set forth in the petition unless ordered otherwise by the supreme court.

Because Metzner did not request review of this issue, we do not address it on this appeal.

650

represented the plaintiffs; Carroll Metzner and Barrett Corneille represented the defendants.

On the second day of trial, Walsh was examining one of plaintiffs' witnesses, Dr. Keith Sperling. During this testimony, Walsh interrupted Dr. Sperling and stated, "Excuse me, your Honor. There just seems to be a great deal of activity by the defendants during this doctor's testimony." There is a dispute in the record regarding where Walsh was physically located when he made this remark. Both Walsh and Metzner asserted that when Walsh made this remark, he was standing and pointing in the direction of the table at which defense counsel was seated. However, Mitby believed Walsh had been sitting and circuit court Judge Johnston stated his recollection was that Walsh had been sitting.

In response to Walsh's remark, Judge Johnston replied:

> That's correct. Would the bailiff, to regulate this because we're having people coming in and out, in and out and it's become distracting, would you see that no persons come in or out during testimony and let them in at an appropriate break because we're now having so much traffic that I'm noticing the jury starting to follow that traffic movement as well. The jury needs to be undistracted as it relates to their hearing this testimony. So the bailiff and the folks who are here, if you're going to go out, you're going to stay out and you come back in during a sufficient break, but I'm not going to have traffic in and out. And this applies to all people. So counsel, if you would, see, please, that that does not occur and the bailiff make sure, then, that no persons come in or out except at an appropriate time, and that would be when testimony is completed.

After this response, Walsh continued with the direct examination of Dr. Sperling. Shortly thereafter, an investigator assisting Metzner gave him a note stating that the reason the Tollacksons had been going in and out was that Mrs. Tollackson was experiencing chest pains. The note added that she had gone to the hospital. Upon reading this, Metzner interrupted Dr. Sperling's testimony and stated:

> If it please the court, I'd like to interrupt for just a second. Because of the court's admonition, I think in fairness to us the record should show that Mrs. Tollackson has been taken to the hospital with chest pains, and that is the activity that you saw in the courtroom.

At this point, Judge Johnston sent the jury out of the room. He then expressed disappointment in Metzner, and added his concern that providing this information to the jury raised a potential for prejudice. Judge Johnston then asked counsel to consider how to address the matter to the jury and called a recess.

After the recess, plaintiffs moved for a mistrial with costs. Walsh's co-counsel, Mitby, stated he believed that a curative instruction was not possible. Metzner then stated that in his opinion, the court had criticized his clients and the jury had a right to know why the Tollacksons had been coming in and going out of the courtroom. In response to Metzner's statement, Judge Johnston replied that his comments had been addressed to everyone.

Judge Johnston then granted the mistrial. In doing so, he reasoned that Metzner's actions created a situation in which the jury would be concerned about Mrs. Tollackson's health. Because the jury would be wondering about Mrs. Tollackson's health for the

remainder of the trial, he concluded that a fair and impartial trial was no longer possible. Judge Johnston added that Metzner knew that by proceeding in this way, Metzner had deprived the court of an opportunity to handle the situation in a way that would not have raised concerns about potential prejudice.

Three weeks later, Judge Johnston conducted a hearing on the award of costs. Judge Johnston decided to award the plaintiffs' costs and the county's costs against Metzner personally, concluding that Metzner had precipitated the mistrial.

Judge Johnston detailed the reasoning supporting his decision. He began by responding to Metzner's assertions that Walsh's earlier statement had precipitated Metzner's remark. Judge Johnston stated that at this point in the trial, his own attention was focused on the witness and the jurors, not on counsels' tables. Prior to Walsh's remark, Judge Johnston "noticed a lot of activity going in and out of the back door," which was in his line of vision. He added that the jurors were becoming distracted by this activity, and were no longer focusing their attention on the witness. Thus, when Walsh made his request, Judge Johnston responded by asking the bailiff to regulate this activity, and by asking counsel to see that it did not continue. Judge Johnston added that he did not refer to either party. He concluded that Walsh's statement and his own response was a "minor point" that was "handled without problem."

Judge Johnston then moved to a discussion of Metzner's remark about Mrs. Tollackson's health. Judge Johnston offered a detailed explanation of the impact Metzner's statement had on the jury:

> They were stunned. They were shocked. Some of them presented with open-mouths at that news. Started to look around at what was going on. In fact, I noted that when I excused the jury, when I was presented with that, a number of them appeared to be shaken to the point [that they began to walk off with their note pads although they had been instructed to leave them]. This was a severe blow. It was something that impacted on the jury.

Later, Judge Johnston added, "And I had no doubt, as I observed that jury and their reaction to that statement, that they all were shocked, that they were . . . deeply affected by that information."

Judge Johnston also explained why Metzner's statement had such a strong impact on the jury. He stated that Metzner had presented the information in a tone that was "strong," "challenging" and "belligerent" rather than informative. He added that the information was presented "in such a manner [as] to make it an emergency type situation." In addition to tone, the nature of the information presented was serious enough to create the dramatic response by the jury, according to Judge Johnston. He postulated that when Metzner stated that Mrs. Tollackson had "chest pains," the jury likely thought she had a serious health problem. At another point, Judge Johnston stated that the information was presented "almost like a bombshell."

Next, Judge Johnston explained that the information presented injected an unrelated matter, concern for Mrs. Tollackson's health, into the trial. He was concerned that the jurors would not be able to put that information out of their minds; thus, Mrs. Tollackson's health had the potential to "become a major event that pervades and permeates the whole proceeding from that point forward." He also believed that jury sympa-

thy, dread or concern was a potential source of prejudice. Therefore, he concluded that an impartial trial was no longer possible.

Finally, Judge Johnston pointed out that when Metzner discovered Mrs. Tollackson was having chest pains, he should have asked for a conference with the judge. Judge Johnston stated that had this occurred, he could have handled the situation in a different manner.

The court of appeals affirmed the order granting a mistrial as well as that portion of the order that required Metzner to pay Lafayette county's costs. However, the court of appeals reversed that portion of the order that required Metzner to pay the plaintiffs' costs.[2] The court of appeals stated that the circuit court had abused its discretionary power to assess costs because its decision was grounded on a mistaken view of the evidence. Relying on Walsh's own statement that he had gotten up and pointed in the direction of the defendants, the court of appeals stated that the circuit court's recollection that Walsh had been sitting, if intended to be a finding of fact, was clearly erroneous. The court stated that Walsh's statement had to be given greater weight, because the circuit court judge had previously stated that he was not watching counsels' tables. Continuing to focus on Walsh's action, the court of appeals then concluded that Walsh had initiated the incident that led to the mistrial. The court

---

[2] The court of appeals' initial decision was released on August 27, 1992. The court of appeals vacated that decision *sua sponte* and issued a second decision on December 17, 1992. Both decisions contain the same result; however, the second decision contains more detailed reasoning. In this opinion, we refer to the second decision.

added that such conduct was inappropriate as a matter of law.

We begin our analysis of the issues before this court by noting that under sec. 814.036, Stats.,[3] the omnibus costs provision, circuit courts have the authority to impose costs on an attorney whose actions have resulted in a mistrial. Under sec. 814.036, the decision to impose costs is discretionary with the circuit court. The discretionary authority to impose costs enables a circuit court to penalize conduct disruptive to the administration of justice. *See State v. Foster,* 100 Wis. 2d 103, 109, 301 N.W.2d 192 (1981) (stating that assessment of a county's costs in calling a jury is a penalty for disruptive conduct).

When a circuit court's action falls within its discretionary authority, that action will be upheld absent an erroneous exercise of discretion. We will sustain a circuit court's exercise of discretion if the circuit court has examined the relevant facts, applied the proper standard of law, and engaged in a rational decision-making process. *Loy v. Bunderson,* 107 Wis. 2d 400, 414–15, 320 N.W.2d 175 (1982). *See also McCleary v. State,* 49 Wis. 2d 263, 277, 182 N.W.2d 512 (1971) (stating that the term "discretion" contemplates a process of reasoning). Thus, our inquiry focuses on whether the circuit court made a reasoned determination. The question is

---

[3] Section 814.036, Stats. 1991–92, provides:

**Omnibus costs provision.** If a situation arises in which the allowance of costs is not covered by ss. 814.01 to 814.035, the allowance shall be in the discretion of the court.

Section 814.036 applies when no other statutes specifically providing for taxing of costs are applicable. *See Gallagher v. Schernecker,* 60 Wis. 2d 143, 150, 208 N.W.2d 437 (1973).

not whether this court would have taken the same action as an original matter. *Schneller v. St. Mary's Hosp. Medical Ctr.,* 162 Wis. 2d 296, 306, 470 N.W.2d 873 (1991).

In a variety of decisions involving review of circuit courts' discretionary actions, this court has repeatedly stated that a major reason circuit courts are given discretionary authority over matters that involve evaluation of the circumstances surrounding a trial is that the circuit court judge is present at trial and is therefore better able to understand what occurred. For example, a circuit court has discretionary authority to grant a new trial in the interest of justice because of the circuit court's " 'opportunity to observe the trial and evaluate the evidence.' " *Krolikowski v. Chicago and Northwestern Transp. Co.,* 89 Wis. 2d 573, 581, 278 N.W.2d 865 (1979) (quoting *Bartell v. Luedtke,* 52 Wis. 2d 372, 377, 190 N.W.2d 145 (1971)). In exercising discretion on whether to grant a mistrial, the circuit court is in a particularly good "on-the-spot" position to evaluate factors such as a statement's "likely impact or effect upon the jury." *Rodriguez v. Slattery,* 54 Wis. 2d 165, 170, 194 N.W.2d 817 (1972). *See also Andritsch v. Henschel,* 27 Wis. 2d 461, 465, 134 N.W.2d 426 (1965) (stating that the circuit court was in a better position than this court to weigh the impact of a statement made by defense counsel, because the tone used by counsel and the context of the statement were not in the record). The reasoning contained in these cases is equally applicable to a circuit court's discretionary authority to impose costs—the circuit court is in the best position to determine whose conduct was disruptive.

We conclude that the circuit court in the present case did not erroneously exercise its discretion in imposing costs on Metzner. In coming to the conclusion that Metzner precipitated the mistrial, the record indicates that the circuit court engaged in a well-reasoned decision-making process. The circuit court concluded that Metzner's action made a fair trial impossible. In so concluding, the court relied partially on the jury's reaction to Metzner's remark. The jury, according to the court, was "shocked," "stunned" and "deeply affected" by Metzner's remark. The reasons for such a strong reaction are clear from the record as well. The court stated that the information was presented "in a manner to make it an emergency type situation," "almost like a bombshell." Metzner's tone was "strong," "challenging," and "belligerent." Furthermore, according to the court, the information presented was of a very serious nature—it suggested a serious health problem.

The court also believed a fair trial was impossible because Metzner's statement had interjected an unrelated factor, jury "sympathy," "dread," or "concern", into the proceedings. The court concluded that this factor could not be eliminated—it had the potential to "pervade[ ] and permeate[ ] the whole proceeding." Furthermore, the circuit court said that Metzner could have handled the situation by presenting the information in a conference with the judge, in which case the judge could have determined whether and how to present it to the jury.

The circuit court also provided a considered explanation of why the mistrial did not result from any behavior on Walsh's part. Judge Johnston, whose attention was focused on the jury and the witness at the time Walsh made his remark, stated he had noticed that the jury was becoming distracted because of move-

ment occurring in the back of the courtroom. Regardless of what Walsh meant to point out, Judge Johnston stated that he was concerned about the distracting activity occurring in the court. Therefore, he replied to Walsh's remark by addressing this activity. Rather than being a source of disruption, Walsh's remark enabled the court to address disruptive activity that was already interfering with the jury's attention.

Metzner urges us to affirm the court of appeals' conclusion that the circuit court erroneously exercised its discretion in imposing costs on Metzner. However, the court of appeals incorrectly applied the law in making this determination. The court of appeals looked to *Krolikowski v. Chicago and Northwestern Transp. Co.*, 89 Wis. 2d at 581, for the general principle that a circuit court erroneously exercises its discretion when it grounds its decision on a mistaken view of the evidence. *Krolikowski* is, however, easily distinguishable from the present case.

*Krolikowski*, 89 Wis. 2d at 575–76, involved an accident in which one car hit a second car, pushing it onto a railroad track. A train then hit the second car. The jury determined that the railroad was five percent negligent and the driver of the first car was ninety-five percent negligent. *Id.* at 576. The circuit court granted a new trial in the interest of justice solely on the ground that the train engineer, the key witness, was confused as to the time at which he set the emergency brake. *Id.* at 582. On review, this court stated that the circuit court's decision was not warranted by the evidence. *Id.* at 581. At several points, the engineer testified that he set the brake after the first car hit the second car. The brakeman corroborated that testimony. *Id.* Only one part of the engineer's testimony was even arguably inconsistent and in the context of the other clear state-

ments this court concluded that there was no conflicting evidence on when the brake had been set. *Id.* at 583–84.

In the present case, the court of appeals decided that Judge Johnston's conclusion, that Walsh was sitting rather than standing when he commented on the courtroom activity, was against the great weight and clear preponderance of the "evidence,"[4] because Walsh himself stated that he stood up and pointed at defense counsel and Metzner also stated that Walsh stood up and pointed. According to Mitby, however, Walsh was sitting. Judge Johnston stated his recollection was that Walsh was sitting, but he also acknowledged that he had been watching the witness and jury rather than counsel.

Even assuming that Walsh did stand and point, the court of appeals' conclusion that the circuit court relied on a mistaken view of the "evidence" in its decision to impose costs on Metzner is inaccurate. Whether Walsh was sitting or standing was irrelevant to the circuit court's analysis regarding who should be responsible for costs—the court did not *rely* on this factor in any way. Judge Johnston specifically stated that Walsh's remark and the court's response was a "minor point" that was "handled without problem." Thus, the circuit court's decision was not founded on a mistaken view of the evidence. Rather, as already discussed, the circuit court relied on the manner in which Metzner made his announcement, as well as the serious nature of the information presented, concluding

---

[4] In fact, there was no testimonial evidence on Walsh's location. The information to which the circuit court refers was provided in colloquies between the attorneys and Judge Johnston during the hearing at which a mistrial was granted and during the later hearing on award of costs.

that both of these had a strong impact on the jury. Judge Johnston also concluded that the concern this statement engendered in the jury precluded a fair and impartial trial. The court added that Walsh's statement, in contrast, provided the court with an opportunity to address the distracting activity occurring in the back of the courtroom. In contrast, in *Krolikowski* the mistaken view of the evidence was the sole basis on which the circuit court relied in granting a new trial.

Not only did the court of appeals inappropriately apply the mistaken view of the evidence doctrine as set forth in *Krolikowski,* the court also inappropriately substituted its judgment for that of the circuit court rather than applying the erroneous exercise of discretion standard of review. Once the court of appeals reached the conclusion that Walsh was standing when he commented on the courtroom activity, the court then concluded that by this action, Walsh initiated the mistrial and therefore Metzner should not have to pay plaintiffs' litigation expenses. The court of appeals came to this conclusion without giving any consideration to the detailed reasoning the circuit court provides to explain its decision to impose costs on Metzner. The accuracy of the evidence on which the circuit court actually relied is not challenged, and the reasoning given by the circuit court provides abundant support for the court's decision to impose costs on Metzner. Therefore, the circuit court's exercise of discretion was proper.

Our conclusion is further supported by the reasoning, discussed above, that the circuit court judge is "on the spot" and therefore in the best position to evaluate

661

attorneys' behavior and the impact of that behavior on a jury. Judge Johnston noted more than once that the record is a "sterile document" and it is difficult to make a record reflect the tone, setting, and demeanor of the incidents that occurred in the court. Judge Johnston was in the best position to evaluate Walsh's and Metzner's actions and their impact. It is inappropriate for the court of appeals to substitute its judgment for that of the circuit judge.

Metzner raised one additional issue on this appeal. Because the court of appeals reversed that portion of the circuit court's order requiring Metzner to pay plaintiff's costs, Metzner argued that the court also should have reversed the order requiring Metzner to pay all of the county's costs. Metzner argued that the court of appeals' decision was inconsistent. Because we reverse the court of appeal's decision on award of plaintiffs' costs, there is no inconsistency. This issue is moot.

*By the Court.*—Affirmed in part and reversed in part.

STEINMETZ, J. *(dissenting).* Before the trial began in this case, the trial judge admonished counsel for both parties regarding what conduct he would tolerate from them. He stated:

> Now, the matter of counsel's conduct, which has been something that has been disconcerting in part throughout this because you folks have not been able to get along and you've expended a lot of energy going back and forth. As far as introduction of evidence which basically moves toward trial of counsel rather than trial of issues, trial counsel's conduct, if it's alleged to be improper, is best left to complaints

to the Professional Responsibility Board, and you can hammer it out there. You're not going to let this trial degenerate into a situation of accusation/cross accusation so that what we have is a loss of the issues and a, most likely, reversal or retrial of this case.

The judge's admonition also included warnings about the pretrial examination of witnesses, the examination of witnesses during the trial and a strong warning concerning what would happen if his orders were not followed. "If I see that happening, I am going to come down on whoever does it." He emphasized that he would come down hard if counsels' conduct became an issue in the trial.

In the middle of the examination of a witness, Attorney Walsh violated the judge's rules when he complained to the court, in the presence of the jury, that "[t]here just seems to be a great deal of activity by the defendants during this doctor's testimony." Attorney Walsh later admitted that when he made this comment about the commotion behind him, "I stepped in front of this chair and this table and I pointed directly to counsel's table of the defense counsel at that time." Attorney Walsh may have been referring to two sources of noise—papers being shuffled at the defense counsels' table and also a commotion at the back of the courtroom caused by some of the defendants leaving the courtroom.

The judge agreed with Attorney Walsh that there was too much noise in the courtroom. He asked the bailiff to prevent people from coming in and out of the courtroom. When Attorney Metzner learned of the reason for the commotion at the rear of the courtroom, he responded to Attorney Walsh's conduct and to the trial

judge's admonishment with potentially disruptive conduct of his own.

The judge excused the jury and later granted the plaintiffs' motion for a mistrial. He also ordered Attorney Metzner to pay the plaintiffs' costs and the county's costs.

I would find that the trial court erroneously exercised its discretion in ordering Attorney Metzner alone to pay all of these costs because the court based its decision on a mistaken view of the evidence. *See Krolikowski v. Chicago & N.W. Trans. Co.,* 89 Wis. 2d 573, 581, 278 N.W.2d 865 (1979). The judge was mistaken when he stated that Attorney Walsh made his declaration about the "activity by the defendants" while he was seated in a chair behind his counsel table. When explaining his decision during the motion hearing, the judge also ignored the fact that Attorney Walsh was pointing at the defense counsel table when he complained about the noise. This view of the facts is incorrect according to Attorney Walsh himself and may have influenced the judge in treating Walsh's accusatory statement as lightly as he did—especially when comparing it to Attorney Metzner's statement.

I find as the court of appeals did that Attorney Walsh violated the judge's rules in the presence of the jury. By doing so, Attorney Walsh initiated the unfortunate incident which resulted in the mistrial.

Attorney Metzner made his statement about Mrs. Tollackson's physical condition in response to Attorney Walsh's accusatory statement about the commotion from the defendants. While Attorney Metzner's conduct may have been improper, it was no more egregious than Attorney Walsh's accusatory statement and conduct.

I therefore dissent from the majority's opinion. I agree with the court of appeals that Attorney Metzner should not be responsible for the plaintiffs' costs. However, I would find that the court of appeals erred in holding Attorney Metzner solely liable for the costs of the county. I would hold that Attorney Walsh and Attorney Metzner should both be liable for the county's costs.

I am authorized to state that JUSTICE ROLAND B. DAY joins the dissenting opinion.