191 Wis.2d 502

**STATE of Wisconsin, Plaintiff–Respondent,**

v.

**John D. BUNCH, Defendant–Appellant.†**

**No. 94–0926–CR.**

Court of Appeals of Wisconsin.

Submitted on Briefs Nov. 25, 1994.

Opinion Released Feb. 1, 1995.

Opinion Filed Feb. 1, 1995.

† Petition for Review Denied.

On behalf of the defendant-appellant, the cause was submitted on the brief of Sandra J. Zenor of Kaiser Law Offices of Hartland.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of James E. Doyle, Atty. Gen., and William L. Gansner, Asst. Atty. Gen.

Before ANDERSON, P.J., and NETTESHEIM and SNYDER, JJ.

NETTESHEIM, Judge.

John D. Bunch appeals from a judgment of conviction for first-degree sexual assault of a child. Bunch argues that the trial court erred by: (1) denying his motion for mistrial, and (2) excluding evidence of a prior sexual assault against the victim by a third party. We conclude that the trial court properly exercised its discretion as to both rulings. We affirm the judgment of conviction.

## FACTS

Bunch was charged with four counts of first-degree sexual assault of a seven-year-old child contrary to § 948.02, STATS. The matter went to jury trial. During the first day of trial, the State completed its case-in-chief, save for the reading of a short stipulation to the jury. Before the trial resumed on the following morning, a man approached Bunch in a courthouse hallway and threw a cup of hot coffee in his face. Bunch was treated by courthouse emergency medical personnel and then transported to the emergency room of a local hospital where he was further treated. He was released the same morning and returned to the courthouse. The proceedings resumed at 11:02 a.m., outside the presence of the jury.

At that time, Bunch's attorney requested a mistrial. In support, Bunch's attorney stated that: (1) Bunch was sedated and under anesthesia; (2) Bunch was in extreme pain and discomfort and that his eyes were burning; (3) Bunch had informed his attorney that he had a headache and his medication was not helping; and (4) Bunch was told by his doctor to go home, lie down, rest and put a cold compress on his eyes to relieve the pain and swelling as soon as he could.

The trial court inquired whether Bunch's attorney had a medical report concerning Bunch's condition. The attorney stated that he did not because the event was an emer-

gency situation. The court also inquired whether Bunch intended to testify. Bunch's attorney declined to conclusively answer this question. The trial court then denied the mistrial request, noting that the State's case was nearly completed and that a mistrial would require the seven-year-old victim to again testify at a second trial. At 1:35 p.m., the evidentiary phase of the jury trial resumed.

The State completed its case by reading the short stipulation. Bunch then presented his defense. Bunch did not testify. As part of his evidence, he proffered the testimony of a third party admitting that he had previously sexually assaulted the young victim. The trial court excluded this evidence on relevancy grounds.

We will recite additional facts as we address the appellate issues.

## DISCUSSION

### 1. *Motion for Mistrial*

 The decision whether to grant a motion for a mistrial lies within the sound discretion of the trial court. *State v. Pankow,* 144 Wis.2d 23, 47, 422 N.W.2d 913, 921 (Ct.App.1988). The trial court must determine, in light of the ·whole proceeding, whether the basis for the mistrial request is sufficiently prejudicial to warrant a new trial. *Id.* We will reverse the trial court's mistrial ruling only on a clear showing of an erroneous exercise of discretion. *Id.* A trial court properly exercises its discretion when it has examined the relevant facts, applied the proper standard of law, and engaged in a rational decision-making process. *Schultz v.*

*Darlington Mut. Ins. Co.,* 181 Wis.2d 646, 656, 511 N.W.2d 879, 883 (1994).

 The deference which we accord the trial court's mistrial ruling depends on the reason for the request. *See State v. Barthels,* 174 Wis.2d 173, 184, 495 N.W.2d 341, 346 (1993). When the basis for a defendant's mistrial request is the State's overreaching or laxness, we give the trial court's ruling strict scrutiny out of concern for the defendant's double jeopardy rights. *Id.; see also State v. Copening,* 100 Wis.2d 700, 710 & n. 3, 303 N.W.2d 821, 827 (1981). In such a situation, a mistrial is allowed only if there is a "manifest necessity" for termination of the trial. *See Barthels,* 174 Wis.2d at 183, 495 N.W.2d at 346; *Arizona v. Washington,* 434 U.S. 497, 505, 98 S.Ct. 824, 830, 54 L.Ed.2d 717 (1978).

However, where the defendant seeks a mistrial on grounds not related to the State's alleged laxness or overreaching, we give the trial court's ruling "great deference." *Barthels,* 174 Wis.2d at 184, 495 N.W.2d at 346. Nor do we apply the "manifest necessity" test. *See Copening,* 100 Wis.2d at 710 & n. 3, 303 N.W.2d at 827.

The situation here obviously comes under the latter scenario because the grounds for the request were totally unrelated to any conduct by the State. As such, Bunch's double jeopardy rights are not implicated, and we give the trial court's ruling "great deference." *Barthels,* 174 Wis.2d at 184, 495 N.W.2d at 346.

 We set out at some length the relevant portions of the mistrial request and the trial court's ruling in the accompanying footnote.[1] Based on this record, Bunch main-

1. [MR. LUCHSINGER]: I have to tell the Court that I don't think [Bunch is] in any condition to resume this trial this afternoon. I think the Court can see that by the discomfort on his face, and it is real important he give his full attention to this trial that he be able to cooperate with me in the presentation of our defense. So that's what I can tell the Court. I think proceeding this afternoon is impractical. Frankly, in light of the doctor's suggestion here that he stay home for two days and· rest those eyes, and ice pack them with compresses, and apply the medicine, I think that the Court ought to grant a mistrial, and I so move.

THE COURT: You have no written medical report from the doctor?
MR. LUCHSINGER: No.
THE COURT: Is there a reason you don't?
MR. LUCHSINGER: Well; the only reason I can think of is it was an emergency room situation—somewhat informal. He was advised then and there and—
THE COURT: I'm assuming if the trial continues, from what you said yesterday, which was a couple of hours worth of defense testimony, that we would finish this afternoon....
....
THE COURT: Are you representing to the Court that if you continued with the defense

tains that "he could not assist in his own defense nor aid in the direct examination of witnesses." He also contends that his condition precluded him from testifying in his own defense.

The threshold problem with Bunch's appellate argument is that he presumes that his attorney's argument regarding Bunch's ability to proceed was established fact. It is obvious, however, that the trial court was not willing to accept Bunch's attorney's representations at face value. Thus, the court inquired as to whether Bunch had a medical report to support his contentions and whether he intended to testify. We must bear in mind that the trial court was in a position to view Bunch's condition and demeanor and to measure those observations against counsel's representations. We do not have that advantage from this appellate perspective.

The questions posed by Bunch's mistrial request were factual: what was Bunch's physical condition and how would it bear upon his ability to proceed with the trial? Obviously, the trial court was in a better position than us to resolve this factual question. As one commentator has observed:

> There can be little question that appellate courts are "ill-suited to consider the variables that go into fact-finding." The deference accorded to the trial court's presence at the reception of testimony extends to reasonable inferences drawn from the

credible evidence. The trial court has a "superior opportunity to get 'the feel of the case.' " The deference may be seen rooted in whatever those intangibles are that elude print (notably the print of the record on appeal) and that make up the "climate" of the trial.

> . . . .

> ... [A] trial tribunal's better position depends upon its having experienced or "sensed" the trial itself.

Ronald R. Hofer, *Standards of Review— Looking Beyond the Labels*, 74 MARQ.L.REV. 231, 240 (1991) (quoted sources omitted; footnotes omitted).

While we usually apply the trial court's "better position" rationale to factual questions concerning the demeanor and credibility of witnesses, *see, e.g., State v. Pepin*, 110 Wis.2d 431, 435–36, 328 N.W.2d 898, 900 (Ct.App.1982), the rationale also pertains to other factual events which occur during the course of a trial court proceeding. Thus, in *State v. Hagen*, 181 Wis.2d 934, 949, 512 N.W.2d 180, 185 (Ct.App.1994), we noted the trial court's "advantage over us in assessing the impact and effect of improper attorney argument on the outcome of the proceedings." And, in *Schultz*, 181 Wis.2d at 657, 511 N.W.2d at 883, the supreme court used similar rationale when affirming a ruling granting a mistrial based on improper attor-

---

today, if I ordered that, that you intend to call your client as a witness?

MR. LUCHSINGER: I can't say that, your Honor. It's still open-ended.

THE COURT: I think you need to take a position one way or the other, because I think that statement on your part is crucial for—certainly a significant factor that I should consider in deciding whether I grant your motion for mistrial. Let's be candid. If you're saying he's simply going to be required to sit here I see that problem as quite different from actually testifying as a witness. We know this, the only thing left from the State is to read a stipulation, and then I have to make my decision.

MR. LUCHSINGER: I have three witnesses to present before I would present Mr. Bunch.

THE COURT: All right. Are you representing at this point that you will call Mr. Bunch as a witness as part of your defense? Defense lawyer is unwilling to make that representation.

. . . .

THE COURT: I think there's one other factor that the record should indicate. The Court is

taking into consideration, under those circumstances, that this is only a one-day trial so far, and it is not certainly a great hardship on the State or Court to retry the case, but having said that, the key witness in this case is a seven-year-old child who was put to considerable effort and pressure, required by law and the attorneys, to spend at least an hour or two on the stand.

I feel obligated somewhat to protect that child's interest, and perhaps take a harsher view to the mistrial motion involving witnesses of that age than I might against a bunch of adults who I, frankly, wouldn't have any qualms about imposing that burden of repetition upon all the litigants even to the attorneys, but considering what's been said here, coupled with the fact that the key witness in the trial is an extremely young child, age 7, coupled with the defendant's attorney's unwillingness to represent that the defendant will be a witness, that the defendant was arguably injured, but yet released here this morning already, the motion for mistrial is denied.

ney remarks made during the evidentiary phase of the proceedings. The court said:

> In a variety of decisions involving review of circuit courts' discretionary actions, this court has repeatedly stated that a major reason circuit courts are given discretionary authority over matters that involve evaluation of the circumstances surrounding a trial is that *the circuit court judge is present at trial and is therefore better able to understand what occurred.... In exercising discretion on whether to grant a mistrial, the circuit court is in a particularly good "on-the-spot" position to evaluate factors such as a statement's "likely impact or effect upon the jury."*

*Id.* (quoted source omitted; emphasis added).

Here, the trial court was not provided with any formal evidence in support of Bunch's mistrial request. Instead, the "evidence" was more informal: the unsworn argument of Bunch's attorney and the physical appearance and demeanor of Bunch himself. Regardless, the trial court was in a superior position over us to determine whether counsel's unsworn representations were borne out by the court's intangible, "on-the-spot" perception of Bunch. Given this record and the trial court's advantage over us, we respect the court's discretionary call on this matter.

Viewed in isolation, Bunch's explanation as to why he did not have a medical report at the ready was eminently reasonable since the event was an emergency. But viewed "in light of the whole proceeding," *Pankow,* 144 Wis.2d at 47, 422 N.W.2d at 921, and particularly in light of the trial court's ability to measure the attorney's claims against the court's own perceptions of Bunch, the court's inquiry about a medical report is understandable. In short, the court was skeptical about Bunch's claim and the court was soliciting some verification of the claim.

While Bunch understandably did not have that verification at hand when he made his mistrial request, *we think it important that he never thereafter provided such information to the trial court.* We do not view the trial court's ruling as foreclosing any further consideration of the mistrial request as the trial progressed; nor do we view the court's ruling as precluding Bunch from seeking a new trial postconviction if he could provide such information. Bunch, however, never pursued the matter further and has never provided, even to this date, any documentation in support of his trial attorney's unsworn arguments.

■ We also observe that Bunch moved for a mistrial, not a continuance. While he was entitled to make that request, we observe that the law prefers less drastic alternatives, if available and practical. *See Barthels,* 174 Wis.2d at 189, 495 N.W.2d at 348–49. We recognize that the case law to date has required the trial court to consider such lesser alternatives only in cases dealing with mistrial requests prompted by prosecutorial conduct. However, we see no sound reason why such should not also be the preferred practice when mistrial requests are prompted by events unrelated to any State conduct.

Here, Bunch had been released from the hospital and was able to attend the resumption of the proceedings. Taking counsel's representations at face value, the doctor had suggested that Bunch rest for two days. We are left to wonder why Bunch pressed to abort the entire proceeding rather than seek a short adjournment.[2]

In conclusion, according due deference to the trial court's superior opportunity to assess the information and the entire situation before the court, we uphold the court's rejection of Bunch's factual contention that he could not proceed with the trial or testify in his own defense. Thus, we affirm the trial court's discretionary decision to deny the mistrial request.[3]

---

2. However, we also observe that the supreme court has said that a trial court also has a sua sponte duty to consider such an alternative. *See State v. Barthels,* 174 Wis.2d 173, 189, 495 N.W.2d 341, 348 (1993). Bunch does not raise this as an issue on appeal.

3. Since we have upheld the trial court's ruling based on Bunch's failure to substantiate his attorney's representations regarding his inability to proceed with the trial, we need not address whether the countervailing reason given by the trial court (the prospect of the young victim having to testify at a retrial) was sufficient.

## 2. *Exclusion of Evidence*

Bunch next argues that the trial court erred in excluding evidence of an alleged prior sexual assault of the victim by another male person. Bunch proffered the testimony of this person, contending that the evidence: (1) would demonstrate that the physical observations testified to by the physician who had examined the victim might have resulted from the victim's contact with the third party, not Bunch; and (2) would show an alternative source of the victim's knowledge of sexual activity. The trial court rejected the evidence on relevancy grounds.

Evidentiary rulings, particularly relevancy determinations, are left to the discretion of the trial court and will not be upset on appeal unless the court misused its discretion. *Shawn B.N. v. State*, 173 Wis.2d 343, 366–67, 497 N.W.2d 141, 149 (Ct.App.1992). We will affirm the trial court's discretionary ruling if it is supported by a logical rationale, is based on facts of record and involves no error of law. *Id.* at 367, 497 N.W.2d at 149.

Bunch relies on *State v. Pulizzano*, 155 Wis.2d 633, 647–48, 456 N.W.2d 325, 331 (1990), to support his argument that the confrontation and compulsory process clauses of the Sixth Amendment required the testimony to be admitted, even though the evidence would otherwise be excluded by § 972.11, STATS. Bunch argues that the trial court erred by not applying the balancing test outlined in *Pulizzano*.[4]

We disagree that the trial court was obligated to conduct a *Pulizzano* analysis in this case. *Pulizzano* holds that "[t]he right to present evidence is not absolute, however. Confrontation and compulsory process only grant defendants the constitutional right to present *relevant* evidence not substantially outweighed by its prejudicial effect." *Id.*, 155 Wis.2d at 646, 456 N.W.2d at 330 (em-

phasis added; citations omitted). *Pulizzano* does not eliminate the threshold requirement that evidence be relevant before it is considered for admission.

Evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Section 904.01, STATS. Bunch contended that the testimony would "explain the physical observations that Dr. Dobbs made, the torn hymen and the enlarged vaginal opening" and "demonstrate a knowledge about sexual things not commonly held by children [the victim's] age."

The facts of this case demonstrate that after the victim had allegedly been sexually assaulted by the witness, a physical examination in January 1990 did not disclose bruising or evidence of sexual molestation. Significantly, the victim's hymen was still intact at that time. Bunch's attorney conceded that the testimony would relate to contact with the child before the 1990 examination. Therefore, the witness's contact with the child before the 1990 examination would not be relevant to explain observations made by Dr. Dobbs in a January 1992 examination following the sexual assault by Bunch. This examination revealed that the child's vaginal opening was scarred and much larger than it should have been, and the hymen was torn. Consequently, the trial court properly exercised its discretion when it excluded the testimony on relevancy grounds. *See* § 904.01, STATS.

The trial court also determined that the testimony would not be relevant to show an alternative source to the child's knowledge of sexual matters because the child's testimony did not reveal that she was unusually conver-

---

4. In *State v. Pulizzano*, 155 Wis.2d 633, 656, 456 N.W.2d 325, 335 (1990), the supreme court held that:

> [T]o establish a constitutional right to present otherwise excluded evidence of a child complainant's prior sexual conduct for the limited purpose of proving an alternative source for sexual knowledge, prior to trial the defendant

> must make an offer of proof showing: (1) that the prior acts clearly occurred; (2) that the acts closely resembled those of the present case; (3) that the prior act is clearly relevant to a material issue; (4) that the evidence is necessary to the defendant's case; and (5) that the probative value of the evidence outweighs its prejudicial effect.

sant with sexual language. Based upon our review of the victim's testimony, we affirm this ruling. Nonetheless, we afford this determination deference because the trial court had the opportunity to hear and view the child as she testified. *See Pepin,* 110 Wis.2d at 435–36, 328 N.W.2d at 900. We conclude that the trial court did not erroneously exercise its discretion by excluding the proffered testimony.

Judgment affirmed.