STATE of Wisconsin, Plaintiff-Respondent,†

v.

LaShonda F. MAYHALL, Defendant-Appellant.††

Court of Appeals

*No. 94–0727–CR. Oral argument April 18, 1995.—Decided May 31, 1995.*

(Also reported in 535 N.W.2d 473.)

†Petition to review denied.
††Petition to cross review denied.

On behalf of the defendant-appellant, the cause was submitted on the briefs and oral argument of *Robert J. Dvorak* of *Dvorak & Fincke, S.C.* of Milwaukee.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *James E. Doyle*, attorney general and *G.M. Posner-Weber*, assistant attorney general. Oral argument was by *G.M. Posner-Weber*.

Before Anderson, P.J., Brown and Snyder, JJ.

ANDERSON, P.J. LaShonda F. Mayhall appeals from a judgment of conviction of first-degree intentional homicide while armed, as party to the crime, and from an order denying her motions for postconviction relief. Because we conclude that the trial court erred in not giving the jury a limiting instruction regarding out-of-court statements made by a nontestifying codefendant, we reverse and remand for a new trial.

The criminal complaint alleged that LaShonda, LaTonia Mayhall (a/k/a LaTonda) and Vernon Walker feloniously and, in concert with others, intentionally caused the death of Leroy Brantley. Brantley was a friend of Miguel Adams. Adams was the father of LaShonda's child. LaShonda felt that Brantley was interfering in her relationship with Adams and told her sister, LaTonia, that she wanted Brantley killed. LaTonia said that Vernon would take care of it.

Ronald Walker, Vernon's stepbrother, told the police that Vernon said that he had gone to Brantley's house and shot through the door. Brantley was found

by the police at his house where he had suffered a gunshot wound to the abdomen. He subsequently died.

A jury trial was held, and the three defendants were tried jointly. LaShonda was subsequently found guilty. She filed motions for postconviction relief which the trial court later denied. LaShonda appeals.

LaShonda raises four issues on appeal. She argues that the court erred in denying her limiting instruction regarding the use of out-of-court admissions of a nontestifying codefendant, in restricting cross-examination of a witness, in denying her postconviction motion alleging ineffective assistance of counsel and in denying the motion to modify her sentence.

## Limiting Instruction

LaShonda contends that "[t]he court erred in denying [her] limiting instruction regarding the use of out of court admissions of a nontestifying codefendant and thereby violated her right to confrontation."[1] As long as jury instructions fully and fairly inform the jury of the law applicable to the particular case, the trial court has discretion in deciding which instructions will be given. *Farrell v. John Deere Co.*, 151 Wis. 2d 45, 60, 443 N.W.2d 50, 54 (Ct. App. 1989). Whether there are sufficient facts to allow the giving of an instruction is a question of law which we review de novo. *Id.* Additionally, a court errs when it fails to give an instruction on an issue raised by the evidence. *Lutz v. Shelby Mut.*

---

[1] The jury instruction at issue in this case is WIS J I—CRIMINAL 221, which provides:

> Evidence has been received of a statement made by defendant (name)____. It may be used only in considering whether defendant (name)____ is guilty or not guilty. It must not be used or considered in any way against defendant (name other defendant)____.

*Ins. Co.*, 70 Wis. 2d 743, 750, 235 N.W.2d 426, 431 (1975).

Before reaching Vernon's out-of-court statements which are the subject of this appeal, we review the law concerning out-of-court admissions made by nontestifying codefendants. In *Bruton v. United States*, 391 U.S. 123 (1968), the Supreme Court restated the following premise:

> [T]he right of cross-examination is included in the right of an accused in a criminal case to confront the witnesses against him secured by the Sixth Amendment . . . .. [A] major reason underlying the constitutional confrontation rule is to give a defendant charged with [a] crime an opportunity to cross-examine witnesses against him.

*Id.* at 126 (quoted source omitted). The Supreme Court held that the Confrontation Clause is violated when a nontestifying codefendant's confession incriminating another codefendant in the crime is introduced at their joint trial. *See id.* at 135-36. The Court held that even a limiting instruction requiring the jury to only consider the confession against the codefendant for which the statement was offered could not cure a Confrontation Clause violation. *Id.*

In *Richardson v. Marsh*, 481 U.S. 200 (1987), the Supreme Court addressed the issue of "whether Bruton requires the same result when the codefendant's confession is redacted to omit any reference to the defendant, but the defendant is nonetheless linked to the confession by evidence properly admitted against him at trial." *Id.* at 202. The Court distinguished *Bruton*, stating that in *Bruton* the codefendant's confession expressly implicated the defendant as his accomplice. *Id.* at 208. In contrast, in *Richardson* the

confession was not incriminating on its face, and became so only when linked with evidence later introduced at trial. *Id.* The Court held: "[T]he Confrontation Clause is not violated by the admission of a nontestifying codefendant's confession with a proper limiting instruction when, as here, the confession is redacted to eliminate not only the defendant's name, but any reference to his or her existence." *Id.* at 211.

■

In the present case, LaShonda is concerned with the testimony of Shawntal Chapman, Jimmie Jones, Bonnie Price, Ronald Walker, Patrick Walker and Paul Herrick regarding Vernon's statements implicating himself in the murder. Based upon our review of the testimony, we conclude that the testimony of Chapman, Jones, Price, Patrick Walker and Herrick did not require a limiting instruction. The statements made to these witnesses only incriminated Vernon in the conspiracy. Unlike in *Richardson*, where the codefendant's statement was linked with other evidence which combined to incriminate the respondent,[2] these statements

_____

[2] In *Richardson v. Marsh*, 481 U.S. 200, 203 (1987), a confession given by one of the codefendants to the police was introduced at trial. The confession was redacted to omit any reference to the respondent. The confession described a conversation between two codefendants as they drove to the crime scene, during which one of the codefendants said that he would have to kill the victims after the robbery. At the time the confession was admitted, the jury was admonished not to use it in any way against the respondent. *Id.* at 203-04. The respondent testified at trial that she was going to borrow money from one of the victims and went with the other codefendants to the victim's house. She testified that she did not know that the other codefendants were armed, nor did she hear a conversation about anyone being robbed or killed. *Id.* at 204. The confession was the only direct evidence that the respondent knew that the victims

were not susceptible to being linked with other evidence to incriminate LaShonda. Thus, there was no reason to give a limiting instruction.

Ronald Walker's testimony concerning Vernon's out-of-court statements, differs from the other statements. Ronald testified that Vernon told him that LaShonda was in the car and that LaShonda was there to show Vernon where Brantley lived. This testimony places LaShonda at or near Brantley's house prior to the murder:[3]

> Q. What occurred then between you and Vernon outside the club?
> A. Me and him had a talk and he told me he believed he had shot somebody.
>
> . . ..
>
> Q. What did he tell you about that situation? Describe when you first met him what was said outside.
> A. He told me that Leroy Brantley was supposed to have slapped LaTonda Mayhall. He went over there to talk to him and he was talking and he said he shot through the door. He said he heard Leroy Brantley scream and he shot again through the door.
>
> . . ..

---

would be robbed and killed before she entered the house. Her own testimony at trial placed her in the car. *Id.* at 206.

[3] We do not address the possible *Bruton* aspects of this testimony because LaShonda concedes in her reply brief that this issue is waived: "As to Ronald Walker, the Defendant concedes that no objection was made, and whatever Bruton argument existed was waived." *See Bruton v. United States*, 391 U.S. 123 (1968).

Q. Did [Vernon] indicate how he happened to get there?

A. He said Jerry Yarbrough drove him there.

Q. And did he indicate who else was with him, if anyone?

A. Yes. He said Shonda Mayhall.

Q. Did he indicate why Shonda would have been in the car?

A. He said she showed him where he lived.

Q. What else, if anything, did Vernon tell you outside the club at that time, if you recall?

A. He said he believed he had killed Leroy Brantley.

Ronald's testimony in the present case is analogous to the situation in *Richardson*. Here, the testimony placing LaShonda at the scene, while not directly incriminating, created the same inferentially incriminating atmosphere as in *Richardson* when combined with the evidence concerning her motive to murder Brantley and Yarbrough's testimony implicating her in the conspiracy.[4] Ronald's testimony required

---

[4] Yarbrough testified as follows:

Q. What occurred after Mr. Walker then returned to the house with his pump shotgun?

A. When he came back in the house, he asked me would I give him a ride to Leroy's house.

Q. What did you say?

A. I told him I don't know where Leroy lived.

Q. Then what happened?

A. Then LaShonda said she knows where, she says, she'll take us. Then I asked him what was he going to do with the shotgun. He said, don't worry about it, I am just going to scare him.

Q. So then what happened?

A. So me, Vernon and Shonda got in the car and we drove over there.

Q. Now, how did you know where to go?

A. Shonda, she directed.

a limiting instruction as contemplated by *Richardson*: "[W]ith regard to inferential incrimination the judge's instruction may well be successful in dissuading the jury from entering onto the path of inference in the first place, so that there is no incrimination to forget." *Richardson*, 481 U.S. at 208.

The State argues that "[e]ven assuming that error was committed here, [LaShonda's] inability to cross-examine Vernon Walker on his out-of-court statements was harmless beyond a reasonable doubt." At oral argument, the State argued harmless error as follows:

> I think you can get to harmless error. . . . I think we have Jerry Yarbrough . . . who plainly establish[es] LaShonda's guilt either as an accomplice or as an aider and abettor.
>
> . . ..
>
> Jerry Yarbrough's credibility was ravaged on cross-examination. . . . [T]he basis of his testimony of putting her at the scene and involving her in the crime . . . is sufficient to uphold this verdict, absolutely.

Generally, constitutional violations are subject to a harmless-error analysis. *State v. Flynn*, 190 Wis. 2d 31, 54, 527 N.W.2d 343, 352 (Ct. App. 1994), *cert. denied*, 115 S. Ct. 1389 (1995). A conviction will be upheld if it can be shown beyond a reasonable doubt that the error

---

Q. Where were the different people located in this vehicle?
A. I was driving, Vern was on the passenger side and Shonda was in the back.
Q. Where was the shotgun?
A. Vernon had it, he held it between his legs. The butt of it was on the floor and he held it between his legs in the front seat.
Q. Was anything covering it?
A. No.

did not contribute to the guilty verdict. *Id.* at 55-56, 527 N.W.2d at 352-53. We must determine what effect the error had upon the guilty verdict in the present case. *Sullivan v. Louisiana*, 113 S. Ct. 2078, 2081 (1993).

■

We are unable to conclude that the trial court's failure to give a limiting instruction was harmless beyond a reasonable doubt. The evidence against LaShonda is not so substantial that we can ignore the introduction of Ronald's testimony placing her at the scene. Although the State claims that Yarbrough's testimony is sufficient to uphold the verdict, Ronald's corroborating testimony significantly increases Yarbrough's credibility.[5] For example, in closing arguments, the State argued as follows:

> Ronald Walker says that [Vernon] told him he had been in the car just—been in the car with Jerry Yarbrough and with Shonda. Well, are you going to believe Ronald Walker when he says that? Does anybody else say that in this case?
> A month and a half later Jerry Yarbrough's arrested and says I drove Vernon Walker over to Leroy Brantley's house and in the back seat

---

[5] During his testimony, Yarbrough admitted to using drugs on August 31, 1990:

Q. You said you were taking—you were smoking marijuana and you were taking heroin on August 31, 1990, right?
A. Yes.
Q. What kind of heroin were you taking?
A. It was white heroin.
Q. Referred to on the street as China White?
A. Yes.

According to the complaint, neighbors reported to police that they heard shots fired at approximately 1:07 a.m. on September 1, 1990. The police found Brantley shortly thereafter.

scrunched down when we got there, at least, was Shonda Mayhall. Ronald Walker says that Vernon Walker told him that Shonda gave the directions how to get there. Again Jerry Yarbrough. And Jerry Yarbrough and Ronald Walker have not talked or seen each other since August 31st of 1990. Jerry Yarbrough says, yes, Shonda gave the directions how to get there. Again Jerry Yarbrough.

And Jerry Yarbrough and Ronald Walker have not talked or seen each other since August 31st of 1990. Jerry Yarbrough says yes, Shonda gave the directions because I had never been there before. I didn't know where he stayed.

The State relied heavily on the corroborating statements of Yarbrough and Ronald in making its case against LaShonda. The State cannot now argue that Ronald's statement was an insignificant part of the trial when it was brought up as a key piece of evidence during closing arguments, just prior to jury deliberations. In the absence of an instructional framework by which the jury could search through and separate the evidence, we cannot conclude that the jury did not use Ronald's testimony in convicting LaShonda.

We reverse and remand to the circuit court for a new trial. We address the next issue raised by LaShonda concerning the cross-examination of Stacie Neal because it is likely to arise in future proceedings.

*Cross-Examination of Stacie Neal*

LaShonda argues that the court erred in restricting cross-examination of Neal regarding the effects of drug use by Yarbrough and denied LaShonda's right to confrontation. The scope of cross-examination is within the trial court's discretion. *State v. Olson*, 179 Wis. 2d

715, 722, 508 N.W.2d 616, 619 (Ct. App. 1993). We will not overturn such a decision unless there was an erroneous exercise of discretion. *See Schultz v. Darlington Mut. Ins. Co.*, 181 Wis. 2d 646, 656, 511 N.W.2d 879, 883 (1994).

At trial, Neal, Yarbrough's former girlfriend, was permitted to testify concerning Yarbrough's drug use on the night in question. The court, however, refused to allow LaShonda to cross-examine Neal regarding Yarbrough's drug use on other occasions:

> MR. WARD: Your Honor, it's relevant for impeachment purposes because Jerry Yarbrough testified under oath that he was not under the influence of any drugs even though he took drugs all day, and therefore we should be allowed to go in and test that through other witnesses who have seen him under the influence on other occasions and see what this drug—what the drugs do to him and his ability to get around, to know what he's doing, to function.
>
> THE COURT: And I said as far as that day Mr. Breitenbach can ask questions, and he—
>
> MR. SFASCIOTTI: In order to do that, Your Honor, is what we're getting at is someone familiar with the previous declarant, we should be permitted to ask questions as to their ability to observe the declarant's demeanor during such times as he might have taken such substances.
>
> MR. WARD: That's the foundation that you have to lay down to give a lay opinion witness—or give a lay opinion.
>
> THE COURT: It's not relevant.

We conclude that LaShonda's defense counsel, Jerold Breitenbach, failed to preserve this issue for

appeal. Assistant District Attorney Bruce Becker suggested an offer of proof and Breitenbach declined contrary to § 901.03(1)(b), STATS.[6] Section 901.03(1)(b) provides that error may not be predicated upon a ruling which excludes evidence unless the substance of the evidence was made known to the judge by offer or was apparent from the context within which questions were asked. The substance of Neal's testimony is not apparent from the context in which questions were asked; therefore, we cannot conclude that the trial court erroneously exercised its discretion in limiting cross-examination on the basis of relevancy. *See State v. Echols*, 175 Wis. 2d 653, 679, 499 N.W.2d 631, 639, *cert. denied*, 114 S. Ct. 246 (1993).

LaShonda also raises the issue of ineffective assistance of counsel and the issue of whether the trial court erred in finding no new factor and abused its discretion in denying the motion to modify sentence. Because we

---

[6] During the parties' discussion regarding the scope of Neal's testimony, the following statements were made:

MR. BECKER: I don't understand what the defense—what evidence do they expect to elicit from this witness. I guess I would ask for an offer of proof.

MR. BREITENBACH: I don't think it's— You can make an offer of proof if you want, Mr. Becker. We're asking to go into it at this time. She says—

THE COURT: Well, I don't know what your offer of proof is. What are you trying to elicit?

MR. BREITENBACH: All right. Well, Your Honor, I don't know what the witness is going to say one way or another. I don't have to know what the witness is going to say. I'm asking her a question now.

The State was right in suggesting an offer of proof. Such an offer would have given the trial court greater insight into the potential relevancy of Neal's testimony.

reverse on the grounds stated above, we need not reach these issues.

*By the Court.*—Judgment and order reversed and cause remanded.