STATE of Wisconsin, Petitioner-Respondent,†

v.

Ronald J. ZANELLI, Respondent-Appellant.††

Court of Appeals

*No. 96–2159. Oral argument May 13, 1997.—Decided July 15, 1997.*

(Also reported in 569 N.W.2d 301.)

---

†Petition to review denied.
††Petition to cross review denied.

On behalf of the respondent-appellant, the cause was submitted on the briefs and oral argument by *Jane Krueger Smith* of Oconto Falls.

On behalf of the petitioner-respondent, the cause was submitted on the brief of *James E. Doyle,* attorney general, and *Mary E. Burke*, assistant attorney general and oral argument by *Mary E. Burke* of Madison.

Before Cane, P.J., LaRocque and Myse, JJ.

LaROCQUE, J. Ronald Zanelli appeals his civil commitment as a sexually violent person pursuant to ch. 980, STATS., sometimes called the sexual predator law. Zanelli makes the following claims: (1) The trial court lacked subject matter jurisdiction because the State's petition was filed prematurely; (2) the State's pursuit of a civil commitment violated a plea agreement in an earlier criminal proceeding; (3) an unsworn petition is constitutionally defective; (4) his right to remain silent was violated at trial; (5) use of material from prior criminal presentence investigation reports (PSIs) violated the confidentiality provisions of § 972.15, STATS.; (6) testimony from the State's experts violated the psychologist-patient privilege of § 904.04(2), STATS.; (7) the use of pattern jury instruction WIS J I—CRIMINAL 2502 violated his right to due process because it fails to define the term "substantially probable" (that he will engage in acts of sexual violence); and (8) there was insufficient evidence from which the jury could find that Zanelli had a "mental disorder" and from which it could find that there was a "substantial probability" that he would reoffend.

Because we conclude that comments by a psychologist and the prosecutor at trial concerning Zanelli's refusal to be interviewed violated his right to remain silent as provided in § 980.05(1m), STATS., we reverse the judgment of commitment and order a new trial. Because some of the remaining issues Zanelli raises are likely to arise again, we address them as well.[1]

---

[1] We need not address certain other constitutional challenges to ch. 980, STATS. Zanelli concedes similar challenges were resolved contrary to his position by the Wisconsin Supreme Court in *State v. Post*, 197 Wis. 2d 279, 541 N.W.2d 115 (1995), and *State v. Carpenter*, 197 Wis. 2d 252, 541 N.W.2d 105 (1995). This court is bound by the decisions of our supreme

Zanelli was criminally convicted in 1992 of two counts of sexual contact with a child, contrary to § 948.02(2), STATS. The court sentenced him to five years in prison on the first count, and sentence was withheld on the second count and he received ten years' probation to run consecutive to the five-year prison sentence. Shortly before parole was granted on the first count, the State filed a ch. 980, STATS., petition alleging that Zanelli had a mental disorder and was dangerous to others because the disorder created a substantial probability of additional sexual violence. The petition recited Zanelli's 1992 convictions as predicate offenses.

A probable cause hearing was held where the court found the existence of probable cause. *See* § 980.04(2), STATS. Zanelli filed numerous objections to the commitment proceeding, which the trial court denied. At trial, the State's case included the testimony of Dr. Susan Curran, who performed a pre-petition evaluation of Zanelli. Curran performed her examination based solely on Zanelli's medical and corrections records after Zanelli chose to remain silent. Zanelli did participate in Dr. Ronald Sindberg's evaluation. Both experts testified that Zanelli suffered from a mental disorder within the meaning of § 980.01(2), STATS., which created a substantial probability that he would reoffend, within the meaning of § 980.01(7), STATS. Both recommended Zanelli be committed to the care of the Department of Health and Social Services for treatment. Zanelli's first

court. *State v. Clark*, 179 Wis. 2d 484, 493, 507 N.W.2d 172, 175 (Ct. App. 1993). Zanelli sought to preserve the challenges pending a decision by the United States Supreme Court relating to a Kansas statutory scheme for civil commitment of sex offenders. The decision in *Kansas v. Hendricks*, Nos. 95–1649 and 95–9075, 1997 WL 338555 (U.S. June 23, 1997), is contrary to some of Zanelli's contentions.

commitment trial ended in a hung jury. A second trial, largely on the same evidence, resulted in a jury verdict finding Zanelli to be a sexually violent person. He was ordered committed to the care of the Department of Health and Social Services. Zanelli now challenges his commitment.

## SUBJECT MATTER JURISDICTION

■

Zanelli's first contention is that the circuit court lacked subject matter jurisdiction. Failure to comply with a statutory mandate, such as the time a certain procedure must be taken, is more accurately described as a loss of competence to proceed in a particular case. *In re B.J.N.*, 162 Wis. 2d 635, 656, 469 N.W.2d 845, 853 (1991). Zanelli is relying upon the provisions of § 980.02(2)(ag) , STATS., which contemplates the filing of a sexually violent person petition only where "[t]he person is within 90 days of discharge or release, on parole or otherwise, from a sentence that was imposed for a conviction for a sexually violent offense . . . ." He contends that he was not within ninety days of discharge or release from a sentence. Zanelli had been sentenced after conviction on two counts of sexual contact with a person under the age of sixteen. He was sentenced to a five-year prison sentence on the first count, and sentence was withheld and a ten-year period of probation running consecutive to his prison sentence was imposed on count two. When Zanelli was later scheduled for release on the five-year prison term on July 5, 1995, a petition for a ch. 980, STATS., civil commitment was filed June 29, 1995.

Zanelli contends that he was still in custody on count two based upon language in the written judgment of conviction that provided in part: "If and when

[defendant] is considered for parole [on count one], he should be released to an intensive sanction status . . . ." It is Zanelli's position that because a Department of Intensive Sanctions (DIS) placement is considered a custodial placement with the Department of Corrections, § 301.048(4), STATS., he was not within ninety days of release from a sentence. We agree with the State that Zanelli's premise that the court imposed a DIS sentence as to count two is inaccurate.

■

Although the written judgment states that Zanelli "should" be placed in intensive sanctions status, the sentencing hearing transcript shows that the court stated it was "going to recommend" intensive sanctions status. The trial court's statement from the bench unequivocally demonstrates that the court was not imposing a DIS sentence. When a trial court's unambiguous oral pronouncement of sentence conflicts with the written judgment of conviction, the oral pronouncement controls. *State v. Perry*, 136 Wis. 2d 92, 114, 401 N.W.2d 748, 758 (1987). The court did not impose a DIS sentence.[2] Thus, even if we assume without deciding that a ch. 980, STATS., petition is premature as to a defendant who has yet to serve a DIS sentence, we are not confronted with that situation here. At the time the petition was filed, Zanelli was within ninety days of his

---

[2] The State also argues that the trial court's authority to impose a DIS sentence did not exist prior to the effective date of the statute providing for such sentences, § 973.032(1), STATS., took effect July 1, 1992, and Zanelli was sentenced in May 1992. Zanelli contends that the State was required to return to the trial court or to have initiated a direct appeal to correct any error. Because we decide no DIS sentence was given, we need not address this argument.

discharge or release within the meaning of § 980.02(2)(ag), STATS.

## PRIOR PLEA AGREEMENT

Zanelli suggests that the prosecution of the ch. 980, STATS., petition violated the plea agreement reached in his 1992 criminal prosecution. Prior to his plea in that matter, the State had agreed to certain limits to its sentencing arguments in exchange for Zanelli's pleas. Zanelli argues that the State breached that agreement by arguing for additional civil incarceration as a sexual predator. We reject Zanelli's analysis.

When the relevant facts are undisputed, whether a prosecutor's conduct violated the terms of a plea agreement is a question of law reviewed de novo. *State v. Poole,* 131 Wis. 2d 359, 361, 389 N.W.2d 40, 41 (Ct. App. 1986). The defendant bears the burden of clear and convincing evidence that a breach actually occurred and that it was material and substantial. *State v. Windom,* 169 Wis. 2d 341, 349, 485 N.W.2d 832, 835 (Ct. App. 1992).

We first note that the parties' 1992 plea agreement was silent regarding future ch. 980, STATS., proceedings. Thus, the record does not reflect that Zanelli bargained for the State's promise to forego a future ch. 980 proceeding. In addition, *State v. Myers,* 199 Wis. 2d 391, 394, 544 N.W.2d 609, 610 (Ct. App. 1996), holds that a potential ch. 980 petition at some time in the future is merely a "collateral consequence" of a guilty plea. Thus, a defendant is not entitled to relief in the form of a plea withdrawal on grounds that he was unaware of a potential for a later sexual predator commitment. Such consequences "have no definite,

367

immediate or largely automatic effect on the range of the pleader's punishment." *Id.* (citing *State v. James*, 176 Wis. 2d 230, 238, 500 N.W.2d 345, 348 (Ct. App. 1993)). Instead, any future ch. 980 proceeding will "depend on [the defendant's] condition at the time of the ch. 980 proceeding and the evidence that the State will then present on his condition." We conclude that under the circumstances, there was no breach of the criminal plea agreement by virtue of the State's pursuit of a sexual predator petition following completion of the criminal sentence.

### CONSTITUTIONAL RIGHT TO A SWORN PETITION

Zanelli next asserts that the commitment petition was defective because the petition was not sworn. Zanelli concedes that the language of ch. 980, STATS., does not explicitly require a sworn petition. However, he asserts that § 980.05(1m), STATS., implies such a requirement. This subsection states: "At the trial to determine whether the person who is the subject of a petition . . . is a sexually violent person, all rules of evidence in criminal actions apply. All constitutional rights available to a defendant in a criminal proceeding are available to the person." Zanelli reads the last sentence quoted as a mandate for a sworn petition based upon his belief that a defendant in a criminal proceeding has a constitutional right to a sworn complaint.[3] Zanelli, however, fails to offer any authority for his assertion that an accused has a constitutional right to a

---

[3] A sworn complaint in a criminal case is required by statute. Section 968.01(2), STATS.

sworn complaint in a criminal proceeding. We know of none and we reject his claim in this respect.[4]

## RIGHT TO REMAIN SILENT

We next address Zanelli's contention that the State violated his "constitutional right to remain silent." Although the State points to Zanelli's failure to develop this argument in his brief, we conducted oral argument in this case and allowed the parties to sufficiently develop the arguments in respect to this issue.

The State also argues waiver, however, based upon Zanelli's concession that "[n]o objection was made below when these errors occurred." An appellate court will generally not review an issue raised for the first time on appeal, but this rule of judicial administration does not affect the power of an appellate court to deal with the issue. *Wirth v. Ehly,* 93 Wis. 2d 433, 443–44, 287 N.W.2d 140, 145–46 (1983). We doubt there was a waiver here where Zanelli pursued a claim of the violation of his right to remain silent through a series of pretrial motions. The trial court denied the motions.

Zanelli's contentions apparently are based upon Curran's trial testimony that Zanelli refused to participate in her formal evaluation made prior to the filing of a petition, as well as the prosecutor's closing argument that commented on Zanelli's refusal to speak with Curran. Zanelli contends that these actions by the State

---

[4] Other jurisdictions have considered the question of the constitutional necessity for a sworn complaint. *Gramenos v. Jewel Cos.,* 797 F.2d 432, 434 (7th Cir. 1986), states that "[n]o principle of federal law makes a properly attested complaint necessary to an arrest or a criminal prosecution." For a discussion of how the Fourth Amendment to the United States Constitution does not require a sworn criminal complaint, *see People v. Harding,* 216 N.E.2d 147, 149–50 (Ill. 1966).

violate his rights granted persons subject to ch. 980, STATS., proceedings.

The constitutional "right to remain silent" arises from judicial interpretation of the Fifth Amendment to the United States Constitution, which provides that no person "shall be compelled in any criminal case to be a witness against himself . . . ."[5] In furtherance of a meaningful application of this right, in the landmark decision of *Miranda v. Arizona,* 384 U.S. 436 (1966), the United States Supreme Court held inadmissible a defendant's custodial statements unless the police first warned him or her of the right to remain silent. Later, in *Doyle v. Ohio,* 426 U.S. 610 (1976), the Supreme Court held that use of a defendant's post-*Miranda* silence for impeachment purposes at trial violated the due process provision of the Fourteenth Amendment. Ordinarily, of course, as the constitution provides, these rights apply only to persons "in any criminal case." Zanelli, however, relies upon the provisions of §§ 980.03(2) and 980.05(1m), STATS., which effectively incorporate into sexual predator proceedings the constitutional rights of those accused of a crime.

We reject Zanelli's reliance upon § 980.03(2), STATS., which grants the right to remain silent to "the person who is the subject of the petition." The statute plainly does not apply to Zanelli's silence at the time Curran conducted her examination in March 1995 because he was not yet the subject of a petition.

■

However, we conclude that he is correct about the application of § 980.05(1m), STATS., to his circum-

---

[5] Almost identical language is found in art. I, § 8(1) of the Wisconsin Constitution, which states that no person "may be compelled in any criminal case to be a witness against himself or herself."

stances. This subsection is part of the statute titled "Trial" and provides: "At the trial to determine whether the person who is the subject of a petition under s. 980.02 is a sexually violent person, all rules of evidence in criminal actions apply. All constitutional rights available to a defendant in a criminal proceeding are available to the person."

■

We first examine what constitutional rights are available to a defendant in a criminal trial with respect to the right to silence. Under Wisconsin law, a defendant in a criminal trial has a Fifth Amendment guarantee against self-incrimination that protects against references to pre-*Miranda* silence. *State v. Fencl,* 109 Wis. 2d 224, 236, 325 N.W.2d 703, 710 (1982). *Fencl* also extends this right to pre-arrest silence:

> The privilege against self-incrimination found in the Fifth Amendment provides that no person "shall be compelled in any criminal case to be a witness against himself." The State contends that, unless silence is compelled by arrest or a custodial interrogation, it is not protected by the Fifth Amendment. We disagree. The Fifth Amendment protects a person from compelled self-incrimination at all times, not just upon arrest or during a custodial interrogation. Any time an individual is questioned by the police, that individual is compelled to do one of two things—either speak or remain silent. If both a person's prearrest speech and silence may be used against that person, as the state suggests, that person has no choice that will prevent self-incrimination. This is a veritable "Catch–22." Thus the state's theory places an impermissible burden on the exercise of Fifth Amendment rights. We hold that a person is enti-

371

tled to the protection of the Fifth Amendment even prior to arrest or a custodial interrogation.

*Id.* at 237, 325 N.W.2d at 711 (footnote omitted). *Fencl* explains that this constitutional right to pre-arrest silence applies whether or not the accused has received a *Miranda* warning. *Id.* at 237 n.10, 325 N.W.2d at 711 n.10.

*State v. Sorenson,* 143 Wis. 2d 226, 258–59, 421 N.W.2d 77, 90 (1988), decided after *Fencl,* allows the prosecution to comment on a defendant's pre-arrest silence if the defendant chooses to take the stand in his own defense. This restriction had no application in Zanelli's sexual predator trial. Zanelli elected not to testify in his own behalf. When the witness and the prosecutor commented on Zanelli's silence, they violated the *Fencl* rule made applicable to Zanelli by virtue of § 980.05(1m), STATS., which extends to the subject of a sexual predator trial all the constitutional rights available to a defendant in a criminal proceeding. For this reason, we reverse the judgment and remand for a new trial.

PATTERN JURY INSTRUCTION 2502—"SUBSTAN-
TIALLY PROBABLE" THAT THE PERSON WILL
ENGAGE IN ACTS OF SEXUAL VIOLENCE

We address the jury instruction issue because it will arise again on remand. Zanelli contends that it was error for the trial court to refuse to define the term "substantially probable" in relation to the required jury finding that he "suffers from a mental disorder that makes it substantially probable that the person will engage in acts of sexual violence." He contends that the trial court's use of pattern jury instruction, WIS J I—CRIMINAL 2502, which does not define "substantially

probable," violated due process on grounds of vagueness. We disagree.[6]

[6] The jury was instructed consistent with WIS J I—CRIMINAL 2502 as follows:

[The Court:] Before there may be a finding that Ronald Zanelli is a sexually violent person, the State must prove by evidence which satisfies you beyond a reasonable doubt that the following three facts are established:

The first fact that must be established is that Ronald Zanelli has been convicted of a sexually violent offense.

Sexual contact with a child under the age of 16 is a sexually violent offense.

The second fact that must be proved and established is that Ronald Zanelli has a mental disorder.

"Mental disorder" means a congenital or an acquired condition affecting the emotional or volitional capacity that predisposes a person to engage in acts of sexual violence. "Acts of sexual violence" means acts which constitute "sexually violent offenses."

Sexual contact with a child under the age of 16 is a sexually violent offense.

Evidence has been submitted that Ronald Zanelli committed other sexually violent offenses before committing sexual assault of a child. This evidence alone is not sufficient to establish that Ronald Zanelli has a mental disorder. Before you may find that Ronald Zanelli has a mental disorder, you must be so satisfied beyond a reasonable doubt from all the evidence in the case.

The third fact that must be established is that Ronald Zanelli is dangerous to others because he has a mental disorder which creates a substantial probability that he will engage in acts of sexual violence.

The special verdict which will be submitted to you consists of three questions.

Question No. 1 is as follows: Has Ronald Zanelli been convicted of a sexually violent offense? And there will be a place for you to place your answer, either yes or no.

Question No. 2, Does Ronald Zanelli have a mental disorder? And a space for your answer.

Question No. 3, Is Ronald Zanelli dangerous to others because he has a mental disorder which creates a substantial probability that he will engage in acts of sexual violence? And a space for your answer.

A trial court enjoys discretion to decide what jury instructions will be given, as long as the instructions fully and fairly inform the jury of the law applicable in a particular case. *State v. Mayhall,* 195 Wis. 2d 53, 57, 535 N.W.2d 473, 475 (Ct. App. 1995). The failure to define "substantially probable" may be compared to the failure to define "reasonable doubt" in a criminal case. The government must prove beyond a reasonable doubt every element of a charged offense. *In re Winship,* 397 U.S. 358, 361 (1970). Nevertheless, the United States Supreme Court has also unanimously, albeit dictum, agreed that: "The beyond a reasonable doubt standard is a requirement of due process, but the Constitution neither prohibits trial courts from defining reasonable doubt nor requires them to do so as a matter of course." *Victor v. Nebraska,* 114 S.Ct. 1239, 1243 (1994).

Zanelli compares his vagueness argument to the analysis relating to statutes challenged on grounds of vagueness. The constitutional foundation of a vagueness challenge to a penal statute is the procedural due process requirement of fair notice. *State v. Ehlendfeldt,* 94 Wis. 2d 347, 355, 288 N.W.2d 786, 789 (1980). A statute should be sufficiently definite to allow a judge

---

If you are satisfied beyond a reasonable doubt that Ronald Zanelli has been convicted of a sexually violent offense, then you should answer Question No. 1 Yes. If you are not so satisfied, you must answer Question No. 1 No. If you are satisfied beyond a reasonable doubt that Ronald Zanelli has a mental disorder, then you should answer Question No. 2 Yes. If you are not so satisfied, you must answer Question No. 2 NO. If you are satisfied beyond a reasonable doubt that Ronald Zanelli is dangerous to others because he has a mental disorder which creates a substantial probability that he will engage in acts of sexual violence, then you should answer Question No. 3 Yes. If you are not so satisfied, you must answer Question No. 3 no.

or jury to objectively apply its terms to the conduct of a defendant in order to determine his guilt or innocence without having to create or apply a judge's or jury's own standards. *Id.* If a statute is so obscure that persons of common intelligence must necessarily guess at its meaning and differ as to its applicability, it is unconstitutional. *Id.* "Of course it is neither necessary, nor possible, that a statute define the boundaries of the conduct which it seeks to proscribe with mathematical precision. A certain amount of vagueness and indefiniteness is inherent in all language and, if not permitted, nearly all penal statutes would be void." *Id.*

Zanelli proposed a jury instruction defining the term as follows:

> A result has a substantial probability of occurring if there are indications strong enough to alert a reasonably prudent person not only to the possibility of the result occurring, but the indications also must be sufficient to forewarn the person that the result is highly likely to happen.

A number of writers have suggested that jurors may be more confused than enlightened when jury instructions attempt to define terms that are otherwise comprehensible to a layperson. *See* Note, *Reasonable Doubt: An Argument Against Definition,* 108 HARV. L. REV. 1955 (June 1995); Peter J. Tiersma, *Reforming the Language of Jury Instructions,* 22 HOFSTRA L. REV. 37 (Fall 1993), for a discussion. Perhaps the court here believed that the phrase "highly likely to happen" overstated the requirement of substantial probability. Zanelli points to the definition of "substantial" as "relatively great in size, value or importance" set forth in the NEW LEXICON WEBSTER'S DICTIONARY OF THE ENGLISH

LANGUAGE. The same dictionary defines probable as "likely though not certain to occur or be true." *Id*. at 797. We believe the trial court had the discretion to give this instruction. We do not believe, however, that failure to do so was a due process violation.

## PATIENT-PSYCHOLOGIST PRIVILEGE: SECTION 905.04, STATS.

Zanelli contends that the introduction of testimony regarding his psychiatric condition violated the physician-patient privilege afforded by § 905.04(2), STATS.[7] The general rule of privilege as applicable here allows the patient a privilege to prevent disclosure of confidential communications made or information obtained for purposes of diagnosis or treatment by the patient's psychologist. Subsection (4)(a) of the same statute provides an exception to the privilege as to "communications and information relevant to an issue in proceedings to hospitalize the patient for mental illness . . . ."

██

We conclude that our supreme court considered and rejected this argument in *Post*, 197 Wis. 2d at 333,

---

[7] Section 905.04(2), STATS., provides:

A patient has a privilege to refuse to disclose and to prevent any other person from disclosing confidential communications made or information obtained or disseminated for purposes of diagnosis or treatment of the patient's physical, mental or emotional condition, among the patient, the patient's physician, the patient's registered nurse, the patient's chiropractor, the patient's psychologist, the patient's social worker, the patient's marriage and family therapist, the patient's professional counselor or persons, including members of the patient's family, who are participating in the diagnosis or treatment under the direction of the physician, registered nurse, chiropractor, psychologist, social worker, marriage and family therapist or professional counselor.

541 N.W.2d at 134: "We conclude that both initial commitment and discharge hearings under chapter 980 are similarly 'proceedings for hospitalization' which fall within the established exception to the privilege found in § 905.04(4)(a)."

## PRESENTENCE INVESTIGATION CONFIDENTIALITY

Zanelli also argues that the State was allowed to use information found in presentence investigation reports in violation of the confidentiality provisions found in § 972.15, STATS.[8] In this case, the State's experts used Zanelli's PSIs from his prior criminal cases in their evaluation of him as a candidate for a ch. 980, STATS., petition. Furthermore, portions of Zanelli's PSI were read to the jury at the trial. The trial court concluded that the statutory exception to confidentiality in § 972.15(5), STATS., authorized the State to use the PSI in this manner.

We are of the opinion that the trial court could not properly apply § 972.15(5), STATS., which allows the

---

[8] Section 972.15(4), STATS., provides: "After sentencing, unless otherwise authorized under sub. (5) or ordered by the court, the presentence investigation report shall be confidential and shall not be made available to any person except upon specific authorization of the court."

Subsection (5) provides in part:

> The department may use the presentence investigation for correctional programming, parole consideration or care and treatment of any person sentenced to imprisonment or the intensive sanctions program, placed on probation, released on parole or committed to the department under ch. 51 or 971 or any other person in the custody of the department or for research purposes. The department may make the report available to other agencies or persons to use for purposes related to correctional programming, parole consideration, care and treatment, or research.

department to use PSIs for "care and treatment" to justify use of the information in the PSI in the petition, or as evidence at trial from which the jury finds the facts to support a commitment.

Rather, because the matter is remanded, we direct the court to use its discretionary authority under § 972.15(4), STATS. This statute allows a PSI to be made available "upon specific authorization of the court." This provision thus goes beyond the limited "care and treatment" provision in subsec. (5). We conclude that the court may apply this section in its discretion to open the PSI to the State's psychologists who are called upon by ch. 980, STATS., to evaluate whether a person is a sexually violent person in need of treatment. Because the PSI may contain information highly relevant to this inquiry, we conclude that the trial court has the discretion to release it for this purpose. This approach permits the trial court to weigh countervailing factors. It may decide whether the PSI in fact contains relevant evidence, whether that evidence is available from other sources, weigh its probative value against the potential for unfair prejudice and consider all other relevant factors of a particular case. A similar decision should be made with respect to use of PSI evidence at trial. This case-by-case determination is therefore governed by the trial court's discretionary powers as authorized by § 972.15(4).

## SUFFICIENCY OF THE EVIDENCE

Because we order a new trial, we do not address Zanelli's challenges to the sufficiency of the evidence except to summarily state that the State presented evidence that, if believed, established each of the elements required by law to the degree of proof necessary.

Zanelli contests the admissibility of expert testimony on the issue of predicting future dangerousness. Zanelli argues that because the state of scientific knowledge on that issue is disputed within the psychological community, testimony on that issue was not "scientific, technical, or otherwise specialized knowledge" within the meaning of § 907.02, STATS., but rather was impermissible lay opinion testimony. We cannot agree. First, any conflicts or inconsistencies in the expert testimony on this issue go to credibility, not admissibility. *See State v. Pruitt*, 95 Wis. 2d 69, 82, 289 N.W.2d 343, 349 (Ct. App. 1980). Second, Zanelli had the opportunity to argue the unreliability of scientific thought on this issue to the jury. As stated by the United States Supreme Court in *Barefoot v. Estelle*, 463 U.S. 880, 901 (1983), the adversary process can be "trusted to sort out the reliable from the unreliable evidence and opinion about future dangerousness . . . ." We conclude that the testimony on future dangerousness was properly admitted as expert testimony under § 907.02.

Both Curran and Sindberg testified that Zanelli's condition created a substantial probability that he would reoffend. Curran testified that Zanelli possessed many of the risk factors that historically are associated with recidivists. She testified that Zanelli was particularly likely to reoffend in regard to "sexual contact with young boys." Sindberg also testified that Zanelli possessed risk factors that tend to indicate a high recidivism rate. Sindberg testified as to well over a dozen risk factors and their relation to Zanelli's case.

The jury also heard evidence about Zanelli's 1992 convictions and about a 1977 incident involving young boys that resulted in a misdemeanor conviction. There

was also evidence of Zanelli's unsatisfactory progress in sex offender treatment and of his sexual misconduct while in prison. The jury was entitled to rely on this evidence in determining that Zanelli's condition created a substantial probability that he would reoffend.

*By the Court.*—Judgment reversed and cause remanded with directions.

MYSE, J. *(concurring).* I concur with the majority opinion but feel compelled to write separately to emphasize the desirability of preparing a pattern jury instruction defining "substantially probable" in sexual predator cases. *See* § 980.01(7), STATS.

While there has long been debate as to the advisability of attempting to define the various burdens of proof to be applied by a jury in any particular case, Wisconsin has clearly cast its lot with those states concluding that a definition assists the jury in discharging its most important responsibilities. Accordingly, we define "reasonable doubt," WIS J I—CRIMINAL 10, and "greater weight of the credible evidence," WIS J I—CRIMINAL 200, to assist the jury in understanding the weight of evidence necessary to meet the burden placed upon the party with the obligation to persuade the jury. While I agree with the majority decision that there is no constitutional right to have the term "substantially probable" defined, I fear that the lay understanding of this language may lead to jury confusion and anomalous results.

In particular, it is possible that this language could be misunderstood to permit the State to demonstrate by less than a preponderance of evidence the likelihood a defendant will commit criminal acts upon release. If a jury viewed the dictionary definition of

probable as "likely though not certain to occur," it could construe this to encompass a degree of likelihood of less than 50%. It is unclear that the modifier "substantially" would protect the jury from misunderstanding the appropriate burden of proof. "Substantially" is a relative term with a wide and varied meaning to different people.

In the interest of fairness and to assist the jury in a proper understanding as to the burden of proof to be applied in sexual predator cases, a definition of substantially probable is highly desirable. It avoids the application of the wrong burden of proof and assists the jury in understanding the relative relationships that exist between the various burdens placed upon the party with the burden of persuasion. A standard jury instruction would be of great benefit to the judges of this state and assure consistency in its application of the appropriate standard in all sexual predator cases.