COURT OF APPEALS
DECISION
DATED AND FILED

September 6, 2024

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2023AP911-CR**

STATE OF WISCONSIN

Cir. Ct. No. 2019CF540

IN COURT OF APPEALS
DISTRICT IV

STATE OF WISCONSIN,

  PLAINTIFF-APPELLANT,

 V.

JEREMY BRYAN DREW,

  DEFENDANT-RESPONDENT.

APPEAL from a judgment of the circuit court for Monroe County: MARK L. GOODMAN, Judge. *Affirmed*.

Before Kloppenburg, P.J., Graham, and Taylor, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1    PER CURIAM. In 2016, the State charged Jeremy Bryan Drew with multiple felony counts alleging crimes related to sexual assaults of his minor child, A.B., and one count alleging physical abuse of A.B.'s older brother.[1] Drew entered ***Alford*** pleas pursuant to a plea agreement with the State in 2018, resolving all of the charges against him, and he was sentenced in February 2019.[2]

¶2    In October 2019, the State filed the criminal complaint in this action against Drew alleging crimes related to sexual assaults of A.B.[3] Drew moved to dismiss the 2019 case. Drew argued that the charges in the 2019 case were resolved by the plea agreement in the 2016 case, and, therefore, that the prosecutor breached the plea agreement in the 2016 case by filing the criminal complaint in the 2019 case. As a remedy, Drew sought the specific performance of the plea agreement in the form of the dismissal of the 2019 case. The Monroe County circuit court granted the motion to dismiss. The court found that the allegations underlying the charges in the 2019 case have "virtually [the] identical fact pattern" and time frame—comprising oral and anal sex in the family residence when A.B. was eight or nine years old—as the allegations underlying the charges in the 2016 case. The court determined that the filing of the charges in the 2019 case breached the prosecutor's implicit promise that the plea agreement in the 2016 case

---

[1] To protect the dignity and privacy of the victim, we refer to her as A.B., using initials that do not correspond to her real name. *See* WIS. STAT. RULES 809.19(1)(g) and 809.86 (2021-22). All references to the Wisconsin Statutes are to the 2021-22 version unless otherwise noted.

[2] An ***Alford*** plea is a guilty plea that allows the defendant to maintain the defendant's innocence but "accept a conviction and sentence for the crime." ***State v. Nash***, 2020 WI 85, ¶¶2, 33, 394 Wis. 2d 238, 951 N.W.2d 404 (citing ***North Carolina v. Alford***, 400 U.S. 25, 37 (1970)).

[3] For ease of reading, we generally refer to the 2016 complaint and subsequent plea and sentencing as the "2016 case" and the 2019 complaint and subsequent proceedings as the "2019 case."

constituted "a full and final resolution" of all of A.B.'s sexual assault allegations in the time frame at issue in the 2016 case.

¶3      On appeal, the State argues that the circuit court erred when it dismissed the 2019 case because, it contends, the charges in the 2019 case are distinct from those resolved by the plea agreement in the 2016 case. In support, the State relies exclusively on the offense dates stated in the charging documents in both cases. More specifically, it argues that the charges in the 2016 case were limited to offenses that occurred in May 2015, the date stated in the amended information, and the charges in the 2019 case relate to offenses that occurred before May 2015. However, the State's argument fails because it disregards the court's factual findings in the 2019 case, which the State does not show are clearly erroneous, that the offenses charged in both cases are based on allegations that share the same fact pattern and occurred during the same time frame when A.B. was eight or nine years old. More specifically, the State fails to support its assertion that the 2019 case charges offenses that occurred before the offenses charged in the 2016 case.

¶4      Accordingly, we conclude that the State fails to show that the offenses charged in the 2019 case are distinct from those that were resolved by the plea agreement in the 2016 case. Because the State does not develop an argument

that the circuit court otherwise erred in granting specific performance of the 2016 plea agreement in the form of the dismissal of the 2019 case, we affirm.[4]

## BACKGROUND

¶5     The following facts relating to the 2016 and the 2019 cases are undisputed.

### The 2016 case

¶6     A.B. was interviewed at her school by a detective and a social worker on November 1, 2016, when she was eleven years old. She described Drew's actions, either by speaking or in writing during the interview, as follows. Drew forced her to engage in anal and oral sex acts "more than 7 times." On one occasion, Drew entered the family bathroom as A.B. was getting out of the shower and he "got naked," put her on the bed in the bedroom, and "put his penis in [her] mouth and butt." When he took his clothes off, she asked what he was doing and he said "wait and find out." She thought at the time that she could trust him, could not believe that he "did it," and almost vomited. On other occasions, Drew touched her breasts and her genitals with his hand, and his penis touched her "butt" and her mouth. Drew also physically abused her and her older brother. The sexual assaults occurred approximately two years before the November 1, 2016 interview, when A.B. would have been about nine years old.

---

[4] Specifically, the State does not make an argument that, if we conclude that the prosecutor breached the plea agreement, either the breach was not material or the circuit court erroneously exercised its discretion in ordering specific performance by dismissing the 2019 case. *See* **State v. Deilke**, 2004 WI 104, ¶¶10, 13, 274 Wis. 2d 595, 682 N.W.2d 945 (Only material and substantial violations of the terms of a plea agreement implicate due process and require a remedy; and an appellate court will not reverse the remedy selected by the circuit court for a breach of a plea agreement "unless the circuit court erroneously exercised its discretion.").

¶7    On November 2, 2016, the State filed a criminal complaint in Monroe County circuit court charging Drew with the following:

> (1) 1st Degree Child Sexual Assault-Sexual Contact With a Child Under age 13, incident date November 01, 2016.
>
> (2) Incest, incident date November 01, 2016.
>
> ….
>
> (4) Exposing Genitals, incident date November 01, 2016.[5]

¶8    A.B. subsequently participated in a forensic interview. A.B. described Drew's conduct, either by speaking or in writing during the interview, as follows. A.B. was sexually assaulted by Drew when she was eight or nine years old. On one occasion, Drew came into the bathroom "butt naked" when she was in the shower, bent her over the tub and put his penis in her "butt," and then followed her into the bedroom and licked her vagina. "More than once," he came into her bedroom early in the morning, woke her up and put his penis in her mouth, and stopped because he had to go to work. Drew also physically abused A.B. and her brother.[6]

¶9    At the preliminary hearing, defense counsel called into question the date charged in the State's criminal complaint. Counsel pointed out that A.B. said in her November 1, 2016 school interview that the abuse had stopped about two years before, thereby making the incident date of November 1, 2016,

---

[5] The third count, which we have omitted from this list, charged Drew with physical abuse of A.B.'s older brother. We omit this charge from our discussion because it is not material to the arguments that the State makes on appeal.

[6] We generally refer to this forensic interview and the preceding school interview collectively as "the 2016 interviews."

"impossible." In response, the prosecutor filed an information charging the following counts, with quotation marks as shown:

> (1) 1st Degree Child Sexual Assault- Sexual Contact or Intercourse with a Child Under Age 13, (to wit: penis to mouth contact), incident date of "the month of May 2015"
>
> (2) Incest, incident date of "the month of May 2015"
>
> ....
>
> (4) Exposing Genitals, incident date November 01, 2016.
>
> (5) 1st Degree Child Sexual Assault- Sexual Contact or Intercourse with a Child Under Age 13, (to wit: penis to anus contact), incident date of "the month of May 2015"

The information modified the incident dates for the first two charges from November 1, 2016, to "the month of May 2015," and added the fifth charge with the "month of May 2015" incident date.

¶10 Drew moved to dismiss count 4 of the information on the ground that there was no allegation of exposing genitals on November 1, 2016, in the criminal complaint. In response to the motion, the prosecutor filed an amended information, changing the date of count 4 to "the month of May 2015."

¶11 Several months later, the State filed a second amended information charging the following counts, with quotation marks as shown:

> (1) Causing Child [Under] 13 to View/Listen to Sexual Activity, incident date of "the month of May 2015"
>
> (2) Incest, incident date of "the month of May 2015"
>
> ….
>
> (4) Exposing Genitals, incident date "the month of May 2015"

6

(5) 1st Degree Child Sexual Assault- Sexual Contact or Intercourse with a Child Under Age 13, (to wit: penis to anus contact), incident date of "the month of May 2015"

¶12 On the same date that the second amended information was filed, Drew entered *Alford* pleas to the amended count of causing a child under 13 to view/listen to sexual activity with an incident date of "the month of May 2015" and one count of physically abusing a child, which pertained to Drew's abuse of A.B.'s older brother. The remaining counts were dismissed outright as part of the plea agreement.

¶13 In February 2019, the circuit court sentenced Drew to five years imprisonment, consisting of two and one-half years of initial confinement and two and one-half years of extended supervision.

*The 2019 case*

¶14 On November 21, 2018, after Drew entered his pleas but before he was sentenced, A.B. participated in another forensic interview. The State did not disclose, and Drew was not otherwise aware of, this 2018 interview before Drew was sentenced in the 2016 case. When asked why she was participating in the interview, A.B. said that she heard from her foster mother that the authorities "don't have enough evidence yet to put [Drew] in jail or prison, and right now he's roaming free and you guys don't want that, so you need to get as much information out of me as possible to put him in jail."

¶15 A.B. recounted four incidents of sexual assault as follows. On one occasion, Drew was watching pornography and saying he "was horny." A.B. "had enough" of hearing his comments. She had him walk to the bedroom and lie down, and she pulled down his pants and initiated oral sex on him. Drew asked

7

what she was doing and "was confused" when she pulled down his pants. This incident occurred when she was "about 8" years old.

¶16 On another occasion, after the incident just described, Drew woke A.B. up, put his penis in her mouth, and then left for work.

¶17 On another occasion, after the incident just described, Drew licked A.B.'s vagina when she was sleeping naked in the bed with him.

¶18 On another occasion, after the incident just described, when A.B. was in the shower, she yelled for Drew to come help her with her hair, and he told her to bend over and put his penis in her "butt." A.B. said that she previously recounted this incident during her 2016 interviews.

¶19 On October 17, 2019, the State filed the criminal complaint in the 2019 case, based on A.B.'s 2018 interview. The State subsequently filed an information that charged the following counts, with quotation marks as shown:

> (1) 1st Degree Sexual Assault of a Child Under Age 12, incident date "on or between August 03, 2013 and May 01, 2015"
>
> (2) Incest, incident date "on or between August 03, 2013 and May 01, 2015"
>
> (3) Exposing Genitals or Pubic Area, incident date "on or between August 03, 2013 and May 01, 2015"
>
> (4) 1st Degree Sexual Assault of a Child Under Age 12, incident date "on or between … August 03, 2013 and May 01, 2015"
>
> (5) Incest, incident date "on or between August 03, 2013 and May 01, 2015"
>
> (6) Exposing Genitals or Pubic [Area]

(7) 1st Degree Sexual Assault of a Child Under Age 12 to wit "licking the victim's vagina," incident date … "on or between August 03, 2013 and May 01, 2015"

(8) Incest, incident date "on or between August 03, 2013 and May 01, 2015"

(9) Exposing Genitals or Pubic [Area,] incident date "on or between August 03, 2013 and May 01, 2015"

A.B. was eight and nine years old between August 3, 2013, and May 1, 2015.

¶20    Drew moved to dismiss the charges, arguing that they are precluded by the plea agreement in the 2016 case. Drew specifically argued that the State materially breached the plea agreement in the 2016 case by charging him with additional crimes related to the same allegations "that precipitated" the plea agreement in the 2016 case.[7]

¶21    The circuit court granted the motion and ordered specific performance enforcing the plea agreement in the 2016 case by dismissing the 2019 case with prejudice. The court found that the facts alleged in the 2016 interviews were largely the same as those alleged in the 2018 interview:

> With one notable exception, the information [A.B.] provided in her 2018 interview hardly differs from what she first said in 2016. Her second time around, she again recalled a string of sexual[] assaults suffered at the hands of her father. They all occurred at the family residence. She was between eight or nine years old. She again claimed that her father subjected her to acts of fellatio, cunnilingus and anal intercourse. Just like in 2016, she said he assaulted her multiple times.

---

[7] Drew also argued that the State violated Drew's constitutional right to exculpatory information and statutory rights to discovery by failing to disclose A.B.'s 2018 forensic interview to him. Drew does not renew those arguments in his respondent's brief on appeal, and, accordingly, we do not further consider these arguments.

What is new in her 2018 claims is her frankly astonishing claim that she took it upon herself to perform oral sex. She admitted she made these additional claims because [Drew] was free on bond and she wanted to give law enforcement more information she believed it needed to lock him up. Her admission is an unmistakable nexus linking the 2016 and the 2019 complaints. Moreover, [this new allegation] involving her volunteering to perform oral sex is highly suspect.

¶22    The circuit court concluded that, in bringing the 2019 case for sexual assaults that occurred when A.B. was eight or nine years old, "based on a virtually identical fact pattern found in the 2016 [c]riminal [c]omplaint," the prosecutor breached the implicit promise to Drew that the plea bargain "constituted a full and final disposition of all charges involving A.B." based on A.B.'s allegations of "more than seven" acts of sexual assault during that time frame. The court explained:

Implicit was [the promise that] the plea bargain constituted a full and final disposition of all charges involving [A.B].

This promise was implicit for the following reasons. Initially, [A.B.] alleged in 2016 she was sexually assaulted more than seven times. In the 2016 case, the state [] only charged Drew with two counts of First Degree Sexual Assault of a Child. Under the plea bargain, Count One was amended downward. And Count Five was dismissed outright as part of the bargain. Under the circumstances, the outright dismissal of Count Five would lead a defendant to reasonably believe the joint sentencing recommendation encompassed a full and final resolution of [A.B.]'s "more than seven" assault allegations.

¶23    The State appeals.

## DISCUSSION

¶24    To repeat, the State argues that the criminal charges in the 2019 case are distinct from the crimes charged in the 2016 case that were subject to the plea agreement because the conduct charged in the 2016 case occurred in May 2015

10

and the conduct charged in the 2019 case occurred before May 2015. We reject this argument because it disregards the circuit court's factual findings, which the State does not show are clearly erroneous, that the offenses charged in both cases share the same fact pattern and occurred during the same time frame when A.B. was eight or nine years old. More specifically, the State fails to show that the 2018 interview disclosed, and the 2019 case charged, crimes that occurred before the crimes alleged in the 2016 interviews and charged in the 2016 case. Accordingly, we conclude that the State fails to show that the 2019 case charges crimes that are distinct from those that were resolved by the plea agreement in the 2016 case.

¶25 We review de novo whether the prosecutor committed a substantial and material breach of the plea agreement. *State v. Deilke*, 2004 WI 104, ¶10, 274 Wis. 2d 595, 682 N.W.2d 945. We review the circuit court's factual findings under a clearly erroneous standard. *State v. Williams*, 2002 WI 1, ¶5, 249 Wis. 2d 492, 637 N.W.2d 733; *State v. Matson*, 2003 WI App 253, ¶15, 268 Wis. 2d 725, 674 N.W.2d 51 ("The terms of a plea agreement and the historical facts of the State's conduct that allegedly constitute a breach of a plea agreement are questions of fact," which must be accepted unless clearly erroneous.). "Once a defendant has [detrimentally] relied upon a prosecutorial promise in any way and the state does not fulfill its promise, the promise is to be held enforceable against the state." *State v. Bond*, 139 Wis. 2d 179, 188, 407 N.W.2d 277 (Ct. App. 1987).

¶26 "The burden is on the party arguing a breach to show, by clear and convincing evidence, that a breach occurred and that the breach is material and substantial." *Deilke*, 274 Wis. 2d 595, ¶13.

11

¶27 Drew supports his argument of plea agreement breach by citing the allegations in A.B.'s 2016 interviews that the sexual assaults occurred in the family residence "about two years ago," which would place them in 2014, and that the sexual assaults occurred in the family residence when she was eight or nine years old, which would place them between August 2013 and August 2015. He argues that, by agreeing to a plea agreement that resolved the charges stemming from these allegations, the State implicitly promised, and he reasonably believed, that the plea agreement resolved A.B.'s allegations of sexual assault against him in the family residence between August 2013 and August 2015.

¶28 Recall that the State based the charges of the 2019 case on the 2018 interview with A.B. The circuit court found that, as alleged by A.B., all of the incidents recounted in the 2018 interview occurred at the family residence when A.B. was eight or nine years old. The court also found that all of these incidents involved the same sexual acts as A.B. recounted in her 2016 interviews that formed the basis for the 2016 case, with the only differing fact being A.B.'s new claim to have initiated the first incident of oral sex when she was eight years old. As to that one difference, the court found that A.B.'s new allegation made before Drew was sentenced in the 2016 case in order to "give law enforcement more information she believed it needed to lock [Drew] up," provided "an unmistakable nexus linking the 2016 and 2019" cases.

¶29 The circuit court determined that the prosecutor made the implicit promise in the plea agreement in the 2016 case that the plea agreement "constituted a full and final disposition" of the charges involving the "more than seven times" that A.B. alleged Drew sexually assaulted her in the family residence when she was eight or nine years old. The court further determined that the prosecutor breached that implicit promise by bringing the 2019 case charging

12

sexual assaults of A.B. based "on a virtually identical fact pattern" and in the same time frame "found in the 2016" case.

¶30 On appeal, the State does not show that the circuit court's factual findings—that the crimes charged in the 2019 case share the same fact pattern as those charged in the 2016 case and occurred during the same time frame when A.B. was eight or nine years old—are clearly erroneous. Rather, the State relies solely on the differences in the dates of the charged conduct as identified in the charging documents for each case. That is, the State relies on the fact that the date of the crimes charged in the information and two amended informations in the 2016 case was listed as "the month of May 2015" (when A.B. was nine years old), and the State contrasts that date with the date stated in the information in the 2019 case as "between August 03, 2013 and May 01, 2015" (when A.B. was eight and nine years old). Based on these different dates, the State argues that the crimes charged in the 2019 case occurred before the crimes charged in the 2016 case. We reject the State's argument for the following reasons.

¶31 The State does not on appeal explain why the amended information in the 2016 case stated "the month of May 2015" as the date of the assaults charged in that case, or why the information in the 2019 case states "between August 3, 2013 and May 1, 2015" as the date of the assaults charged in that case. More specifically, the State does not provide any record support for its assertion that the assaults charged in the 2016 case occurred only in May 2015, or that the assaults charged in the 2019 case occurred only between August 2013 and May 2015. Regardless, it is well established that the State is afforded greater flexibility in alleging a time frame for the commission of child sexual assault. *See State v. Fawcett*, 145 Wis. 2d 244, 250, 426 N.W.2d 91 (Ct. App. 1988) (in cases involving child sexual assault, the date of the commission of the crime "need not

be precisely alleged" because the date is not an element of the crime); *State v. Stark*, 162 Wis. 2d 537, 544-45, 470 N.W.2d 317 (Ct. App. 1991) (the State must "inform a defendant, within *reasonable* limits, of the time when the offense charged was alleged to have been committed" because "child victims of sexual assault are often unable to pinpoint dates") (emphasis in original).

¶32 Here, the allegations that provided the basis for the charges in the 2016 case were not limited to May 2015, as stated in the amended information. Rather, to repeat, the conduct alleged in the 2016 interviews that provided the basis for the 2016 case occurred when A.B. was eight or nine years old, or from August 2013 to August 2015. And, the conduct alleged in the 2018 interview that provided the basis for the 2019 case also occurred when A.B. was eight or nine years old, or from August 2013 to August 2015. The State fails to show, with supporting cites to the record, that the 2019 case charges crimes alleged to have occurred before the crimes alleged to have occurred as charged in the 2016 case.

¶33 The State argues that this case is like *State v. Zanelli*, 212 Wis. 2d 358, 569 N.W.2d 301 (Ct. App. 1997). In that case, this court concluded that a defendant's plea in a criminal proceeding did not preclude the State from pursuing civil commitment of the defendant as a sexually violent person under WIS. STAT. ch. 980 on completion of the criminal sentence. *Id.* at 367-68. We explained that "the record [did] not reflect that Zanelli bargained for the State's promise to forego a future ch. 980 proceeding," and we cited case law stating that a potential ch. 980 petition is a "collateral consequence" of a guilty plea and depends on evidence of the defendant's condition at the time of the petition. *Id.* By contrast, here the 2019 case is not a collateral consequence of Drew's guilty plea in the 2016 case, and it is based on allegations that share both the same fact pattern and

14

time frame as the allegations that provided the basis for the 2016 case. The State does not show that the situation in *Zanelli* is analogous to the situation here.

¶34 The State also argues that this case is like *State v. Killian*, 2023 WI 52, 408 Wis. 2d 92, 991 N.W.2d 387. In that case, our supreme court concluded that Killian's second prosecution following a mistrial did not violate double jeopardy because the new offenses were not identical in law or fact to the offenses charged in his first prosecution. *Id.*, ¶¶3, 50. However, *Killian* is easily distinguished from this case. Unlike in *Killian*, this case does not involve a mistrial, a trial of any kind, or an argument based on the identical-in-law-and-fact analysis that underlies a double jeopardy claim. Rather, this case concerns the application of contract principles to a plea agreement that resolved charges in the 2016 case based on allegations that shared the same fact pattern and time frame as the allegations that provided the basis for the charges in the 2019 case. The State does not show that the analysis in *Killian* informs our analysis here.

¶35 The State makes general and non-controversial assertions about the State not being precluded from "bringing additional charges" after an earlier prosecution in "often messy" child sexual assault cases. However, the State does not ground these assertions in the facts or record of this case. In sum, we conclude that the prosecutor breached the plea agreement in the 2016 case when it brought charges in the 2019 case that: (1) are based on allegations that share the same fact pattern and time frame as the allegations that provided the basis for the 2016 case;

15

and (2) the State does not show alleged crimes that occurred earlier than the crimes alleged in the 2016 case.[8]

## CONCLUSION

¶36    For the reasons stated above, we affirm.

*By the Court.*—Judgment affirmed.

This opinion will not be published.    *See* WIS. STAT. RULE 809.23(1)(b)5.

---

[8] The State also argues that the circuit court erred when it "followed" the "red herring" of Drew's analysis of the State's purported discovery violation, and "suggested" that the prosecutor was obligated to inform Drew that the plea agreement did not fully resolve all of A.B.'s allegations. We reject these characterizations of the court's decision. In any event, we do not address these arguments further because, as stated in ¶25, we review de novo the legal question of whether the facts establish a breach of the plea agreement.